In re GENERAL AMERICAN
COMMUNICATIONS
CORP., Debtor.

GENERAL AMERICAN
COMMUNICATIONS
CORP., Plaintiff,

v.

George M. LANDSELL, Defendant.

GENERAL AMERICAN
COMMUNICATIONS
CORP., Plaintiff,

v.

Ronald C. PRATI, Defendant.

GENERAL AMERICAN
COMMUNICATIONS
CORP., Plaintiff,

v.

D. Brock LYNN, Jr., Defendant.

No. M–47B.

United States District Court,
S.D. New York.

April 25, 1991.

E. Martin, of Patterson, Belknap, Webb & Tyler, New York City (local counsel) and M. O'Neill, of O'Neill Banowsky & McClure, Dallas, Tex. (pro hac vice) for Ronald C. Prati, George M. Lansell, and D. Brock Lynn, Jr. (Defendants).[1]

K. Miller, of Robson & Miller, New York City, for General American Communications Corp., (GACC).

## ORDER

RICHARD OWEN, District Judge:

No objections having been received, and upon a review by me in accordance with Rule 9033 of the Rules of Practice and Procedure in Bankruptcy, the decision of the United States Bankruptcy Court in the above-captioned matter and the findings of fact and conclusions of law therein are accepted by this Court. So ordered.

---

**1.** Defendants' attorneys' initial motions named only Defendant Prati as their client. Defendants' George M. Lansdell and D. Brock Lynn, Jr. submitted identical affidavits, exhibits and memorandum of law in support of their respective identical motions for abstention, stay of

RECOMMENDATION TO DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK ON ABSTENTION.[2] MEMORANDUM OF DECISION ON DENIAL OF STAY UNDER BANKRUPTCY RULE 5011(C); DENIAL OF RELIEF FROM § 362 AUTOMATIC STAY; AND GRANTING OF SUMMARY JUDGMENT IN PART AND DENIAL OF SUMMARY JUDGMENT IN PART.

FRANCIS G. CONRAD, Bankruptcy Judge, Sitting by Special Designation.

## INTRODUCTION

A. Abstention; Rule 5011(c) Stay; and, Relief From § 362 Automatic Stay.

Defendants move[3] for: discretionary abstention from hearing the above referenced these adversary proceedings, and relief from the automatic stay to continue their Texas State Court action against GACC. Although the record does not reveal a formal change in their notice of appearance, Defendants' attorneys purported to represent all of the Defendants in their subsequent memorandums.

2. Rules of Practice and Procedure in Bankruptcy Rule 5011 requires a motion for abstention must be heard by the Bankruptcy Judge who shall file a report and recommendation to District Court. See, *Baptist Medical Center of New York v. Singh (In re Baptist Medical Center of New York)*, 80 B.R. 637, 645 (Bkrtcy. E.D.N.Y.1987).

3. We have jurisdiction to determine this matter under 28 U.S.C. §§ 1334(b), 157(b), and the general reference to this Court dated July 10, 1984 (Ward, C.J.).

4. 28 U.S.C. § 1334, **Bankruptcy Cases and Proceedings,** provides in part:

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

5. Rules of Practice and Procedure in Bankruptcy Rule 5011, **Withdrawal and Abstention from Hearing a Proceeding,** provides in part:

(b) **Abstention from Hearing a Proceeding.** Unless a district judge orders otherwise, a motion for abstention pursuant to 28 U.S.C. § 1334(c) shall be heard by the bankruptcy judge, who shall file a report and recommendation for disposition of the motion. The

adversary proceedings under 28 U.S.C. § 1334(c)(1)[4] and Rules of Practice and Procedure in Bankruptcy Rule 5011(b);[5] a stay of the adversary proceedings under Rule 5011(c);[6] and, relief from automatic stay under 11 U.S.C. § 362(d).[7]

We recommend the District Court for the Southern District of New York deny abstention because, *inter alia,* Defendants' state court action against GACC was commenced in violation of 11 U.S.C. § 362 and is void *ab initio.* Thus, there is no pending state court action to abstain from. We deny Defendants' request for a Rule 5011(c) stay because continued delay of these adversary proceedings prejudices the administration of GACC's bankruptcy estate. We also deny Defendants' request for relief from the automatic stay under 11 U.S.C. § 362(d) because they failed to sustain their burden of proof of entitlement.

clerk shall serve forthwith a copy of the report and recommendation on the parties to the proceeding. Within 10 days of being served with a copy of the report and recommendation a party may serve and file with the clerk objections prepared in the manner provided in Rule 9033(b). Review of the report and recommendation by the district court shall be governed by Rule 9033.

6. Rules of Practice and Procedure in Bankruptcy Rule 5011, **Withdrawal and Abstention from Hearing a Proceeding,** provides in part:

(c) **Effect of Filing of Motion for Withdrawal or Abstention.** The filing of a motion for withdrawal of a case or proceeding or for abstention pursuant to 28 U.S.C. § 1334(c) shall not stay the administration of the case or any proceeding therein before the bankruptcy judge except that the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion. A motion for a stay ordinarily shall be presented first to the bankruptcy judge. A motion for a stay or relief from a stay filed in the district court shall state why it has not been presented to or obtained from the bankruptcy judge. Relief granted by the district judge shall be on such terms and conditions as the judge deems proper.

7. 11 U.S.C. § 362(d)(1) states: On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack of adequate protection of an interest in property of such party in interest ...

## B. Summary Judgment.

GACC seeks summary judgment on Defendants' affirmative defenses and counterclaims on seven points: this Court has subject matter jurisdiction over these adversary proceedings and Defendants' counterclaims; an interlocutory default judgment rendered by a Texas State Court in Defendants' post-petition lawsuit against GACC does not bar these adversary proceedings; the judgment entered in a Federal District Court action against the partnerships also binds Defendants as limited partners; Defendants' fraud counterclaims must be dismissed; Defendants' counterclaims of breach of contract, defective merchantability and declaratory judgment are barred by res judicata; and, GACC is entitled to summary judgment on its claims against Defendants.

Generally, we are not inclined to address summary judgment motion when there is a pending recommendation to the District Court to deny abstention because the rejection of our recommendation may render the summary judgment decision advisory. In the proceeding sub judice, however, we reach the summary judgment issue on our subject matter jurisdiction, *in personam* jurisdiction, and whether these proceedings may be "core" or "related to" because we are required to make such determinations under 28 U.S.C. § 157(b)(3) and because our experience has been that the District Court usually requests our comments.

We grant GACC summary judgment against Defendants' affirmative defense of lack of subject matter and *in personam* jurisdiction over GACC's proceedings because we have subject matter jurisdiction and nationwide *in personam* jurisdiction over Defendants.

We determine GACC's proceedings against Defendants are "core" because GACC's causes of action against Defendants accrued post-petition, thus we have the power to enter a final Order. Defendants have not filed proof of claims, thus, we will honor Defendants' jury demands in these proceedings. We accept Defendants'

position that we have subject matter jurisdiction and core powers to enter a final Order on their counterclaim and we likewise determine a trial by jury is appropriate on Defendants' counterclaims.

As an alternative to our "core" determination, GACC's and Defendants' proceedings are "related to" GACC's bankruptcy because the outcome has a significant impact on GACC's ability to pay its creditors. In this event, we recommend the District Court withdraw our reference over these proceedings because of Defendants' jury demand and try these proceedings in the District Court before a jury.

We do not reach summary judgment on the following issues until, and unless, the District Court accepts our recommendation to deny abstention and determine these proceedings are "core": whether the judgment entered in a Federal District Court action against the partnerships also binds Defendants as limited partners; whether Defendants' counterclaims of fraud and breach of contract, defective merchantability, and declaratory judgment are barred by res judicata; or, whether GACC is entitled to summary judgment on its cause of action against Defendants.

### BACKGROUND [8]

Prior to bankruptcy, GACC was engaged in the business of structuring, packaging, and promoting tax advantaged investments. In 1982, GACC packaged and promoted private placement offerings of interests in three limited partnerships engaged in television programing to produce and market certain "Felix the Cat" videotape programs; namely, 1982 GAC Video Production Series—Texcat Associates (Texcat); 1982 GAC Video Production Series—Texcat Associates II (Texcat II); and, 1982 GAC Video Production Series—Astrocat Associates (Astrocat) (Texcat, Texcat II and Astrocat are collectively referred to as Partnerships).

The limited partnership interests were securities sold by the distribution of a document titled "Private Placement Memoran-

---

**8.** For the limited purposes of disposing of Defendants' and GACC's motions, our background facts are gathered from the parties' memorandums of law, affidavits, and exhibits.

dum." The Private Placement Memorandum was provided to the limited partnerships. The limited partnerships (Defendants) purchased their interests by executing a subscription agreement together with a payment of cash that was approximately 40% of the total price of the securities each was purchasing.

After the Partnerships were fully subscribed, GACC entered into agreements with the Partnerships whereby the Partnerships would acquire from First Performance Television Corp. the rights to produce the video programs ("Rights Acquisition Agreements") and Viewtek Corp. would produce the Video Programs for the Partnerships on a turnkey basis ("Production Facilities Agreement"). Upon completion of the video programs, each of the Partnerships would enter into an agreement with Telefeatures Corp. granting Telefeatures the right to distribute the video programs for free and pay television.

Under the terms of the Rights Acquisition Agreements and Production Facilities Agreements, the Partnerships agreed to pay for the rights to produce the video programs by making a cash payment upon the closing of the Partnerships, with the balance made by the execution of three promissory notes payable to GACC.

The first two notes were to be paid within one or two years, respectively, of the closing of the Partnerships ("Short Term Notes"). The Short Term Notes made by Texcat were in the amounts of $188,900 due April 30, 1983 and $165,700 due on April 30, 1984. The Short Term Notes were to be paid by the Partnerships from capital contributions of the Limited Partners.

The third promissory note ("Production Note"),[9] was due on December 31, 1999 in the amount of $2,847,750. The Production Note was to be paid by the Partnerships by paying GACC a percentage of any gross receipts from the distribution of the video programs. The Production Note was secured by an "Assignment of Gross Re-

ceipts" and "Irrevocable Authority" in favor of GACC and an "Assignment and Security Agreement" granting GACC a security interest in, and general lien upon, the video program, together with copyrights and products derived from the use and exploitation of the video program. The Production Note was a recourse obligation which had to be paid even if revenues derived from video program distributions were insufficient to satisfy the obligations.

As each of the Defendants became limited partners, they executed an assumption agreement whereby each personally assumed, severally, a primary obligor status to pay when due their portion of the unpaid principal amount of the Production Note. The limited partners' share was calculated according to each limited partner's pro rata ownership share in the Partnership, together with 12% interest per annum over three years from the date of the Production Note.

After the Partnerships were fully subscribed and closed, a dispute arose among the general partners, GACC's president and GACC's affiliates concerning, *inter alia*, the Partnerships' refusal to enter into the distribution agreements with Telefeatures. Defendants' claim GACC never intended to fully perform, the tapes were not produced timely, and their quality was below that represented by GACC. Additionally, patent infringement litigation ensued over the rights of distribution.

Thereafter, the Partnerships failed and refused to honor demand for payment on the Short Term Notes. Texcat failed to pay the second Short Term Note ($165,700 due on April 30, 1984). GACC exercised it option under the Assignment and Security Agreement and accelerated the payment of the Texcat Production Note.

On April 1, 1983, GACC sued the Partnerships and general partners in Federal District Court for the Southern District of New York. Defendants (Limited Partners) were not named in this suit. The Partnership and their general partners answered

---

**9.** Additional Production Notes were made by the other Partnerships to GACC and were identical to the Production Notes made by Texcat, except for the amounts and the dates on which they were due.

and asserted 15 affirmative defenses and 11 counterclaims, *inter alia,* alleging fraudulent inducement and misrepresentations made by GACC's president, GACC, and GACC's affiliates to enter into Rights Acquisition Agreements and Production Facilities Agreements, and that there was no consideration for those agreements. As a result, the Partnerships asserted they were discharged from liability on the Short Term Notes and Production Notes. The Partnerships also alleged GACC's president, GACC, and GACC's affiliates violated Federal Securities Law in connection with the Partnerships' offerings because of alleged material misrepresentations and material omissions of facts. The Partnerships also claimed GACC's president, GACC, and GACC's affiliates breached their agreements with the Partnerships by failing to produce commercially acceptable and usable video programs. GACC filed several amended complaints. The last amendment, on January 1986, added the claim for the Production Note. GACC asserts it waited until January 1986 to add the Production Note claim because Texcat Partnership's obligation on that Note did not become due until it defaulted on the second Short Term Note.

The District Court action continued for six years, until GACC discovered the apparent intervening insolvency of some of the general partners, and disputed the authority of some of the general partners to continue to represent the Partnership in the District Court action. This questionable authority was brought to the attention of the District Court by GACC's (and other plaintiffs') motion to dismiss the Defendants' counterclaims. The District Court determined the Partnerships had been dissolved under their respective partnership agreements. The District Court's Order gave the Partnerships 60 days to reconstitute and appear financially responsible with successor general partners; failing that, the Court further ordered it would treat GACC's (and other plaintiffs') motion to dismiss as a motion for summary judg-

ment. The district court indicated it would grant the motion and would dismiss with prejudice the Partnerships' and general partners' counterclaims. The Partnerships failed to reconstitute and elect successor general partners. In July 1989, the District Court entered judgment for GACC against each of the Partnerships and Texcat for the full principal amount of the Production Notes, together with accrued interest for a total amount of $4,132,046.50. The District Court also dismissed with prejudice the Partnerships' counterclaims. No appeal was taken from the District Court Judgment. Defendants claim they were not parties to the District Court action.

GACC filed a petition for Chapter 11 relief, 11 U.S.C. §§ 101, et seq., in October, 1983.

After bankruptcy, Defendants (and other similarly situated investors) obtained a February 5, 1988 "Interlocutory Default Judgment" against GACC and others from a Texas State District Court of Dallas County (State Court action). The Texas State Court action was filed in 1987 by Defendants against GACC and the Partnerships. The Texas State Court Judge declared the Assumption Agreements signed by the limited partners of Texcat were procured by fraud and were null and void, and Defendants were not parties to the District Court action. The Texas State Court found fraud by GACC; failure of consideration and material breach of conditions; and violation of Texas Securities Laws [10] and Deceptive Trade Practices Act.[11]

After the District Court Judgment was entered, GACC commenced these adversary proceedings to enforce the Assumption Agreements executed by Defendants.

Defendants answered by general denial of all of GACC's allegations and demanded a trial by jury.

Defendants raised 11 affirmative defenses, including: lack of personal and subject matter jurisdiction; failure to comply with Rule 8(a); and, the February 5, 1988 "In-

---

**10.** Tex.Rev.Civ.Stat.Ann.Art. 581–33(A)(2) (Vernon 1989 Supp.).

**11.** Texas Deceptive Trade Practices Act, Tex.Bus. & C.Code Ann. § 17.46 (Vernon 1987).

terlocutory Default Judgment" entered against GACC.

Defendants assert 6 counterclaims against GACC which are prefaced with a statement that we have subject matter and personal jurisdiction, their counterclaims are core matters, and venue is proper in our District. Defendants' counterclaims are based on Texas securities laws, Texas deceptive trade practice laws, common law fraud, breach of contract, and failure of consideration.

Defendants filed their requests for abstention, Rule 5011(c) stay, and relief from the automatic stay after GACC filed its motion for summary judgment. Oral arguments were heard on November 16, 1990 and the matter was taken under advisement.

### ARGUMENTS OF PARTIES

A. Abstention.

Defendants claim the interests of justice will be best served if we abstain because this adversary proceeding requires extensive discovery of complicated factual issues which will take time to develop. Defendants also say this proceeding raises complicated issues of State law that are more properly determined by a State Court rather than a Bankruptcy Court. Defendants state the Texas Court is very familiar with the present issues and is prepared to act quickly on the matter. Furthermore, Defendant Prati states he would be particularly prejudiced because he has no connection to the New York forum. Finally, Defendants charge GACC with abusive forum shopping because of its delay in notifying the Texas Court of GACC's bankruptcy.

GACC counters that the issues are not solely of Texas law, rather, the Assumption Agreements, which are the basis of GACC's claims against Defendants, are guarantees of a note executed in New York in payment of services to be rendered in New York. Moreover, GACC argues the

Assumption Agreements states New York is the choice of law. Assuming *arguendo* Texas law does apply, GACC pleads the issues do not involve matters of public concern, nor are they extremely complex or involve unsettled issues of State Law. Instead, the issues involve enforcement of a contract of guaranty, breach of contract, fraud, and misrepresentations. GACC says the Texas State Court action only involved the entry of a default judgment and the Texas State Court has little, if any, familiarity with the substantive issues and, in any event, has been dormant for three years. GACC further says that Defendants commenced the Texas Court action in violation of § 362, thus the Texas Court litigation is void. According to GACC, the resolution of these proceedings will have a significant impact on GACC's estate because the only remaining assets of GACC are certain Short Term Notes and the Production Notes and these proceedings are the only means available to GACC to enforce judgment and pay its creditors.

B. Rule 5011(c) Stay.

Defendants argue we should invoke a Rule 5011(c) stay pending the disposition on our abstention recommendation to the District Court because without the stay GACC "will be able to continue to harass Prati ... (and) drain Prati's limited resources...."

GACC counters that a Rule 5011(c) stay is inappropriate in the event we should recommend against abstention. Moreover, Defendants' claims of GACC's harassment by discovery or draining Defendants' resources are unfounded.

C. Relief From Automatic § 362 Stay.

In the event we were to recommend abstention to the District Court, and assuming *arguendo* the District Court were to adopt such a recommendation, Defendants claim abstention constitutes "cause" under § 362(d)(1)[12] for relief from the automatic

---

12. 11 U.S.C. § 362(d) states: On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or (2) with

stay. Moreover, Defendants claim relief from stay is appropriate because "[a]lthough GACC had already filed its bankruptcy petition, it did not invoke the automatic stay until *after* the Texas court issued a ruling against it."

GACC did not respond to Defendants' request for relief from stay.

## ISSUES PRESENTED

I. Abstention.

A. Mandatory.

1. Waived by Defendants; or,

2. Not present because of our subject matter jurisdiction.

B. Discretionary.

1. Not recommended because there is no pending state court proceeding against GACC, i.e., Defendants' post-petition Texas State Court Action against GACC is void *ab initio;* or,

2. The issues are of the kind routinely addressed by Bankruptcy Courts and do not involve unsettled questions of State Law; or,

3. No evidence Texas State Court may timely adjudicate this proceeding faster than the Bankruptcy Court.

C. Rule 5011(c) Stay.

Not applicable because of negative recommendation on discretionary abstention.

II. Relief From Automatic Stay.

Cause not shown by Defendants.

III. Summary Judgment.

A. Generally.

B. Subject Matter Jurisdiction.

1. Core and related to proceedings.

2. Jury Demand.

C. In Personam Jurisdiction.

## DISCUSSION

I. Abstention.

A. Mandatory Abstention.

■ Although Defendants have conceded that mandatory abstention under 28 U.S.C. § 1334(c)(2) [13] is not appropriate because of our Federal subject matter jurisdiction over these proceedings,[14] Defendants have not formally withdrawn their F.R.Civ.P.Rule 12(b)(1) affirmative defense. Additionally, as discussed *infra,* Defendants maintain their objection to GACC's request for entry of summary judgment against Defendants' F.R.Civ.P.Rule 12(b)(1) affirmative defense. In view of Defendants' contradictory stance and as an exercise of caution, we quickly eliminate mandatory abstention.[15]

---

respect to a stay of an act against property under subsection (a) of this section, if—(A) the debtor does not have equity in such property; and (B) such property is not necessary to an effective reorganization.

**13.** 28 U.S.C. § 1334(c)(2), **Bankruptcy Cases and Proceedings,** provides in part:
(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the

applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

**14.** Aside from Defendants' apparent admission in their Memoranda that we have at least "related to" jurisdiction, Defendants' counterclaims averred that we have subject matter jurisdiction and can enter final orders because their counterclaims are core.

**15.** As noted in *In re S.E. Hornsby & Sons Sand and Gravel Co.,* 45 B.R. 988, 996 (Bkrtcy. M.D.La.1985), the following non-exhaustive requirements must be met before mandatory abstention under 28 U.S.C. § 1334(c)(2) will apply:
A. A timely motion is made;
B. The proceeding is based solely upon a state law claim or upon a state law cause of action;
C. The proceeding is related to a case under Title 11;

Assuming *arguendo* Defendants are able to overcome our ruling the Texas State Court action is void, Defendants failed to present any evidence to confirm their conclusory allegation that these adversary proceedings may be timely adjudicated in any state court forum without detrimental effect on GACC's bankruptcy. See, *J.D. Marshall Intern., Inc. v. Redstart, Inc.,* 74 B.R. 651, 654–55 (N.D.Ill.1987).

B. Discretionary Abstention.

With mandatory abstention out of the way, Defendants request we recommend to the District Court that it would be appropriate to grant permissive abstention under 28 U.S.C. § 1334(c)(1) [16] in the interest of comity with state courts and respect for State law.

Discretionary abstention under 28 U.S.C. § 1334(c)(1) states:

> In contrast to mandatory abstention, section 1334(c)(1) is derived from former 28 U.S.C. § 1471(d) which, in turn, was a statutory response to concerns articulated in *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940)....
>
> Given the genesis of section 1334(c)(1), it is not surprising that the primary determinant for the exercise of discretionary abstention is whether there exist unsettled issues of state law. *See, e.g., Matter of Boughton,* 60 B.R. 373 (N.D.Ill. 1986); *Harley Hotels, Inc. v. Rain's International Ltd.,* 57 B.R. 773 (M.D.Pa. 1985). However, this is not the only factor warranting consideration. Abstention may be appropriate in the "interest of justice," or "in the interest of comity ... or respect for state law." 28 U.S.C. § 1334(c)(1). To some extent, this statutory provision may summarize and incorporate federal non-bankruptcy abstention doctrines found in *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). See *In re DeLorean Motor Co.,* 49 B.R. 900 (Bkrtcy.E.D.Mich.1985).

*Earle Industries, Inc. v. Circuit Engineering, Inc. (In re Earle Industries, Inc.),* 72 B.R. 131, 133 (Bkrtcy.E.D.Pa.1987) (citations omitted).

Appropriate circumstances for discretionary abstention include:

> [i]n cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.
>
> . . . . .
>
> ... where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar.
>
> . . . . .
>
> ... absent good faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings.

*Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814–16, 96 S.Ct. 1236, 1244–45, 47 L.Ed.2d 483, 496–97 (1976) (citations and text omitted as indicated).

To the three exceptional circumstances identified in *Colorado, supra,* the doctrine of *Thompson v. Magnolia,* 309 U.S. 478,

D. The proceeding does not arise under Title 11;
E. The proceeding does not arise in a case under Title 11;
F. The action could not have been commenced in a court of the United States absent jurisdiction under 28 U.S.C. § 1334;
G. An action is commenced in another forum of appropriate jurisdiction; and,
F. The matter can be timely adjudicated in the state forum of appropriate jurisdiction.

**16.** 28 U.S.C. § 1334, **Bankruptcy Cases and Proceedings,** provides in part:

> (c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

483, 60 S.Ct. 628, 630, 84 L.Ed. 876, 880 (1940) can be added:

A court of bankruptcy has an exclusive and nondelegable control over the administration of an estate in its possession. But the proper exercise of that control may, where the interests of the estate and the parties will best be served, lead the bankruptcy court to consent to submission to State courts of particular controversies involving unsettled questions of State property law and arising in the course of bankruptcy administration.

*Id.* (footnotes omitted).

■ Once a Federal Court's jurisdiction attaches to a proceeding, the movant must show exceptional circumstances to justify abstaining from determining that proceeding. *See Bethlehem Contracting Co. v. Lehrer/McGovern Inc.*, 800 F.2d 325, 327 (2d Cir.1986); *Marshall v. Chase Manhattan Bank*, 558 F.2d 680, 683 (2d Cir.1977).

The United States Supreme Court made the following remark on discretionary abstention:

In some cases, the probability that any federal adjudication would be effectively advisory is so great that this concern alone is sufficient to justify abstention, even if there are no pending state proceedings in which the question could be raised.... The various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases. Rather, they reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes.

*Pennzoil Company v. Texaco, Inc.*, 481 U.S. 1, 11, n. 9, 107 S.Ct. 1519, 1526, n. 9, 95 L.Ed.2d 1, 16, n. 9 (1987).

Recently, the Second Circuit thoroughly examined abstention in *De Cisneros v. Younger*, 871 F.2d 305 (2d Cir.1989):

There are several traditional categories of abstention. See *Younger v. Harris*, 401 U.S. 37, 43–57 [91 S.Ct. 746, 750–756, 27 L.Ed.2d 669] (1971) (pending state criminal proceeding); *Burford v. Sun Oil Co.*, 319 U.S. 315, 317–34 [63 S.Ct. 1098, 1098–1108, 87 L.Ed. 1424] (1943) (abstention appropriate to avoid interference with attempts to establish coherent state policy and issues of peculiarly local concern); *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 498 [61 S.Ct. 643, 644, 85 L.Ed. 971] (1941) (federal court should abstain to avoid unnecessary resolution of a constitutional issue that might be mooted by state court construction of a state law). In *Colorado River* the Supreme Court held that abstention may be called for in cases involving 'exceptional circumstances' that do not fit neatly within the above enumerated categories. *See* 424 U.S. at 817 [96 S.Ct. at 1246]. This doctrine was more fully developed in *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 [103 S.Ct. 927, 74 L.Ed.2d 765] (1983). It now requires examination of six factors: (1) assumption of jurisdiction over a res; (2) inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision; and (6) protection of the federal plaintiff's rights.

In analyzing these factors, the Supreme Court admonishes that no single factor is necessarily decisive, and that the test 'does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.' *Moses H. Cone*, 460 U.S. at 16 [103 S.Ct. at 937]; *see also Colorado River*, 424 U.S. at 818–19 [96 S.Ct. at 1246–47].... [T]he absence of [state court's] jurisdiction over a *res*, and the convenience of the federal forum both point toward exercise of federal jurisdiction. See *Bethlehem Contracting Co. v. Lehrer/McGovern Inc.*, 800 F.2d 325, 327 (2d Cir. 1986).

The basis of the district court's decision to abstain is the third factor—avoidance of piecemeal litigation. Because the state and federal issues are 'inextricably linked,' the risk of such adjudication is real in this case and the district court properly abstained from allowing litigation to proceed in installments. See *Gen-*

*eral Reinsurance Corp. v. CIBA–GEI-GY Corp.,* 853 F.2d 78, 81 (2d Cir. 1988)....

The fourth factor looks at the chronological order in which the actions were filed. Here, the first state suit preceded the federal action by three months, and were the test a race to the courthouse, this factor would favor abstention. But the inquiry is not so simplistic; the relative progress of the federal and state proceedings must be carefully examined. See *Moses H. Cone,* 460 U.S. at 21 [103 S.Ct. at 939]; *Bethlehem Contracting Co.,* 800 F.2d at 328; *Arkwright–Boston [Manufacturers Mut. v. City of New York],* 762 F.2d [205] at 211 [ (2d Cir. 1985) ]....

The substantive law to be applied, the fifth factor.... When the applicable substantive law is federal, abstention is disfavored (sic), though the inverse proposition will not alone support a surrender of federal jurisdiction. See *Moses H. Cone,* 460 U.S. at 26 [103 S.Ct. at 942]; *General Reinsurance Corp.,* 853 F.2d at 82; *Lumbermens [Mut. Casualty Co. v. Connecticut Bank & Trust Co.],* 806 F.2d [411,] at 415 [ (2d. Cir.1986) ]. Yet, if federal law is not implicated, and the governing state law involves 'a novel state law theory,' a stronger argument may be made for abstention. See *Telesco v. Telesco Fuel and Masons' Materials, Inc.,* 765 F.2d 356, 363 (2d Cir. 1985).... We have held nonetheless that '[a]lthough the absence of federal issues does not require the surrender of jurisdiction, it does favor abstention where the "bulk of the litigation would necessarily revolve around the state-law ... rights of [numerous] ... parties."' *General Reinsurance Corp.,* 853 F.2d at 82 (quoting *Moses H. Cone,* 460 U.S. at 23 n. 29 [103 S.Ct. at 941 n. 29])....

Finally, we address the sixth factor, whether the rights ... will be adequately protected in the state proceedings. Were there is a threat ... this factor would weigh heavily in favor of exercising federal jurisdiction, see *Bethlehem Contracting Co.,* 800 F.2d at 328....

*De Cisneros v. Younger, supra,* 871 F.2d at 307–309.

Rounding out the discretionary concerns is judicial deference:

Complementing the doctrine of abstention is the closely related doctrine of judicial deference that exists between federal courts: a later filed case can be stayed in favor of an earlier proceeding between the same parties ... to avoid duplicative litigation. *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 165, 81 L.Ed. 153 (1936). In truly exceptional circumstances involving control by state courts over a res or property, a plainly inconvenient federal forum and the existence of piecemeal litigation, federal cases may be dismissed in favor of concurrent state court proceedings. *Colorado River Water Conservation District, supra,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483. But such situations are extremely rare.

*In re Martin–Trigona,* 35 B.R. 596, 599 (Bkrtcy.S.D.N.Y.1983).

█ Where, however, a plaintiff invokes the exclusive jurisdiction of a Federal Court and there are claims which may only be determined by a Federal Court, abstention is not appropriate and *Colorado River's* purpose of avoiding piecemeal litigation is not advanced. *Medema v. Medema Builders, Inc.,* 854 F.2d 210, 214 (7th Cir. 1988).

█ In the proceedings, *sub judice,* the facts do not permit a recommendation for the exercise of discretionary abstention.

█ First, there is no present State Court action pending against GACC from which these proceedings may be abstained. Defendants' Texas State Court action against GACC was commenced after GACC filed its bankruptcy petition and is void *ab initio* as a violation of the Bankruptcy Code's automatic stay under § 362. *Kalb v. Feurstein,* 308 U.S. 433, 438, 60 S.Ct. 343, 346, 84 L.Ed. 370 (1940); *Ellis v. Consolidated Diesel Electric Corp.,* 894 F.2d 371, 372 (10th Cir.1990); *Phoenix Bond & Indemnity Company v. Shamblin (In re Shamblin),* 890 F.2d 123, 125 (9th Cir.

1989); *Smith v. First America Bank (In re Smith)*, 876 F.2d 524, 526 (6th Cir.1989); *Brodsky v. Independent Cement Corporation (In re Marine Pollution Service, Inc.)*, 99 B.R. 210, 217 (Bkrtcy. S.D.N.Y.1989).

 Assuming *arguendo* Defendants were unaware of GACC's bankruptcy, lack of such knowledge is irrelevant because the violation is self-executing. Section 362 does not require notice be given. *Fields v. Demint*, 107 B.R. 194, 194–195 (W.D.Mo. 1989). Although the better practice is to give notice of a bankruptcy, GACC was under no duty to inform its opponents.[17]

 Again assuming *arguendo* Defendants were ignorant of GACC's bankruptcy, and although not articulated by Defendants, we find GACC's delayed announcement of its bankruptcy to the Texas State Court until after that Court's pre-trial dismissal of Defendants' actions against GACC's affiliates and non-dismissal against GACC of a de minimus nature (5 months), and on these facts does not rise to the level of being "stealthily silent" to enable us to invoke the rare equitable exception to § 362. *See, In re Smith Corset Shops, Inc.*, 696 F.2d 971, 977 (1st Cir.1982) (Court created an equitable exception to § 362 that a bankrupt may not "remain stealthily silent" while a creditor unknowingly violates the automatic stay); *Matthews v. Rosene (In the Matter of Matthews)*, 739 F.2d 249, 251–252 (7th Cir.1984) (Court allowed equitable exception to § 362 and denied bankrupt's attempt to invoke § 362 three years after bankrupt had initiated state court lawsuit and lost against creditor). Instead of something sinister, we find the attorneys for both Defendants and GACC were simply careless. Given the pre-bankruptcy and post-bankruptcy relationship between Defendants and GACC, we are compelled to find Defendants were very careless in not knowing about GACC's bankruptcy when they sued GACC.[18] And while we are satisfied with GACC's explanation of their delay, and although notice is not required, we find GACC was careless because we believe the better practice is to give notice of bankruptcy and to stop all parties from further litigation until we give permission to proceed otherwise. Lack of care, however, does not invoke the equitable exception. *See, Smith v. First American Bank, N.A., (In re Smith)*, 876 F.2d 524, 526–527 (6th Cir.1989) (absent evidence of willful attempt by debtor to exploit the stay to obtain an unfair advantage by delay in giving notification to creditor, Court would not invoke equitable exception to § 362 for mere carelessness). Thus, there is no equitable impediment to § 362's effect of rendering the Texas State Court action void.

Assuming *arguendo* the District Court rejects our ruling that the Texas State Court action is void against GACC and finds it is a proper place for these proceedings to be abstained to, a second ground for denial of discretionary abstention is that Bankruptcy Courts routinely address the kinds of State law issues the parties have brought before us. The cases relied upon by Defendants for their proposition that Bankruptcy Courts have "repeatedly" abstained on these kinds of issues are easily distinguishable by non-objection of the parties, *Balcom Technologies, Inc. v. Lamoureux (In re Farm–Rite, Inc.)*, 90 B.R. 49, 50 (W.D.N.Y.1988) (Bankruptcy Judge did not state its reasons for abstention, District Court noted the agreement of the parties to trying the action in state court on the common law fraud and misrepresentation counts), because the proceeding was brought after debtor's reorganization plan had been confirmed and was nearly complete, *Nanodata Computer Corporation v. Kollmorgen Corporation (In re Nanodata Computer Corporation)*, 52 B.R. 334, 343 (Bkrtcy.W.D.N.Y.1985) *aff'd, Intellitek Computer Corporation v. Kollmorgen*

---

17. Under the Act there was a pleading known as "Suggestion of Bankruptcy," which informed others of a debtor's bankruptcy.

18. At this stage of the proceedings, it is not necessary for us to ascertain whether Defendants' Texas State Court action constitutes a willful violation under § 362(h) because GACC has not moved for § 362(h) damages against Defendants.

*Corporation (In re Nanodata Computer Corporation),* 74 B.R. 766, 771 (W.D.N.Y.1987), or because the court was confronted with unsettled issues of state statutory law, *Elegant Concepts, LTD. v. Kristiansen (In re Elegant Concepts, LTD.),* 61 B.R. 723, 728 (Bkrtcy. E.D.N.Y.1986).

A third ground for denying discretionary abstention is that Defendants have not demonstrated why the issues before us involve unsettled questions of law in either Texas or New York. Moreover, Defendants failed to show any evidence that these proceedings can be timely adjudicated in the State forum, or that the State forum could adjudicate these proceedings more quickly than we could.

### C. RULE 5011(c) STAY.

■ Bankruptcy Rules of Practice and Procedure in Bankruptcy Rule 5011(c), *Withdrawal and Abstention from Hearing a Proceeding,* provides:

(c) **Effect of Filing of Motion for Withdrawal or Abstention.** The filing of a motion for withdrawal of a case or proceeding or for abstention pursuant to 28 U.S.C. § 1334(c) shall not stay the administration of the case or any proceeding therein before the bankruptcy judge except that the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion. A motion for a stay ordinarily shall be presented first to the bankruptcy judge. A motion for a stay or relief from a stay filed in the district court shall state why it has not been presented to or obtained from the bankruptcy judge. Relief granted by the district judge shall be on such terms and conditions as the judge deems proper.

We deny Defendants' request for a Rule 5011(c) stay because of our recommendation that discretionary abstention is not appropriate. Moreover, the issues involved are neither novel nor complex.

### II. Automatic Stay.

■ 11 U.S.C. § 362(d)(1) states:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack of adequate protection of an interest in property of such party in interest ...

Defendants seek our permission to continue their post-petition State Court action against GACC with an ultimate goal in obtaining a judgment against GACC. Defendants are unsecured creditors whose rights, if any, are contingent on the successful outcome of a lawsuit against GACC.

The sole ground for cause advanced by Defendants toward entitlement to relief from stay is their belief that the automatic stay was invoked after their Texas State Court action had been commenced against GACC. The fallacy of Defendants position is quite clear. They believed that the automatic stay had to be affirmatively invoked by GACC before it would be effective against them. As the name suggests, however, the automatic stay is automatic and requires no affirmative act by a bankrupt debtor other than the filing of a petition.

The undisputed evidence shows GACC had filed its petition for bankruptcy relief prior to the Texas State Court action. We determined supra, the Texas State Court action is void *ab initio* against GACC because Defendants failed to seek relief from the automatic stay before initiating their lawsuits. No other ground being offered by Defendants, Defendants failed to carry their burden of proof for relief from the automatic stay. 11 U.S.C. § 362(g).

### III. Summary Judgment.

#### A. Generally.

To prevail on a motion for summary judgment, the movant must satisfy the criteria set forth in F.R.Civ.P. 56 as made applicable by Rules of Practice and Procedure in Bankruptcy Rule 7056. F.R.Civ.P. 56 provides in part:

[T]he judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*See, Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Eastman Machine Company, Inc. v. United States,* 841 F.2d 469 (2d Cir. 1988); *Hossman v. Spradlin,* 812 F.2d 1019, 1020 (7th Cir.1987); *Clark v. Union Mutual Life Ins. Co.,* 692 F.2d 1370, 1372 (11th Cir.1982); *United States Steel Corp. v. Darby,* 516 F.2d 961, 963 (5th Cir.1975).

■ The primary purpose for granting a summary judgment motion is to avoid unnecessary trials where no genuine issue of material fact is in dispute. *Farries v. Stanadyne/Chicago Div.,* 832 F.2d 374, 378 (7th Cir.1987).

■ If the presentation by the nonmoving party in support of its version of the facts is such that the Court could not properly direct a verdict against it in a jury trial, or enter a judgment in favor of the moving party notwithstanding a verdict favorable to the nonmoving party, the motion for summary judgment may not properly be granted. *Eastman Machine Company, Inc., supra* at 473, citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

In remanding the case in *Anderson, supra,* so the correct standards under Rule 56 could be applied, the Supreme Court directed:

[T]he judge must ask himself (herself) not whether he (she) thinks the evidence unmistakenly favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—'whether there is (evidence) upon which a jury can proceed to find a verdict for the party producing it. . . .'

*Anderson, id.,* 106 S.Ct. at 2512 (parentheticals supplied for clarity).

■ Thus, the function of a Bankruptcy Court when considering a motion for summary judgment is not to resolve disputed issues of fact but only to determine whether there is a genuine issue to be resolved. *Anderson, supra,* at 2509–11; *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

On a motion for summary judgment our responsibility is to determine whether there are issues of fact to be tried, not to try issues of fact. *Chittenden Trust Company v. Ford Motor Company et al. (In re Burlington Lincoln–Mercury, Inc., d/b/a Southside Lincoln–Mercury),* Slip Op., AP # 87–0045, Case # 86–00145, Jan. 20, 1988, Conrad, B.J. As our Second Circuit stated in *Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir.1987):

Moreover, in determining whether a genuine issue has been raised, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam); *Quinn v. Syracuse Model Neighborhood Corporation,* 613 F.2d 438, 445 (2d Cir.1980). Therefore, not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them. *Schwabenbauer v. Board of Education,* 667 F.2d 305, 313 (2d Cir.1981); *Accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

*Chittenden Trust Co., supra,* at 11, *citing Donahue, id. See, Celotex Corp., supra.*

■ The party moving for summary judgment has the burden of clearly establishing no relevant facts are in dispute. *Celotex Corp., supra,* 106 S.Ct. at 2548;

**152**

*Anderson, supra,* 106 S.Ct. at 2512; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Eastman Machine Company, Inc., supra,* at 473; *Chittenden Trust Co., supra.* Speculation and conjecture will not suffice.

█ Once a party has met its initial burden, the opposing party must set forth specific facts showing that there is a genuine issue for trial and that the disputed fact is material. *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.1983), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Thus, if the movant carries its initial burden the opposing party may not defeat the motion by merely relying on the contentions of its pleadings, but must produce significant probative evidence to support its position. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *United States v. Pent–R–Books, Inc.,* 538 F.2d 519 (2d Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977).

█ Finally, in determining whether there is a genuine issue of any material fact we must view the evidence in a light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam); *Eastman Machine Company, Inc., supra,* at 473; *Rosen v. Biscayne Yacht & Country Club, Inc.,* 766 F.2d 482, 484 (11th Cir.1985). Moreover, all inferences must be construed in favor of the nonmovant. *Diebold, supra,* 369 U.S. at 655, 82 S.Ct. at 994; *Eastman Machine Company, Inc., supra,* at 473; *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984).

█ F.R.Civ.P. 56 also imposes the dual burden on the movant to establish the absence of disputed material fact and that summary judgment is warranted as a matter of law. *Boazman v. Economics Laboratory, Inc.,* 537 F.2d 210 (5th Cir.1976). It is inappropriate to grant summary judgment merely because a movant appears likely to prevail at trial; summary judg-

ment may be granted only when the movant is entitled to relief beyond all doubt. *Federal Savings and Loan Ins. Corp. v. Williams,* 599 F.Supp. 1184 (D.Md.1984).

█ The standard for a summary judgment mirrors the standard for a directed verdict under F.R.Civ.P. 50(a). *Anderson, supra,* 106 S.Ct. at 2511; 9 *C. Wright & A. Miller, Federal Practice and Procedure,* § 2524, at 541–42 (1971) (standard for assessing sufficiency of evidence to recite an issue of fact for the jury "is the same whether it arises in the procedural context of a motion for a directed verdict or of a motion for summary judgment notwithstanding the verdict.").

█ The record in a summary judgment proceeding includes more than a complaint and an answer. The Court must go beyond the mere pleading of the parties and consider all of the admissible evidence set forth in the papers and all inferences reasonably drawn from such evidence to determine whether there is a genuine issue for trial. *Matter of Esposito,* 44 B.R. 817 (Bkrtcy.S.D.N.Y.1984). When an affidavit is submitted in connection with a motion for summary judgment, Rule 56(e) requires the affiant to set forth facts based on personal knowledge, rather than mere opinions or legal conclusions. An affidavit which is essentially conclusory and lacking in specific facts is inadequate to support the movant's burden. *Maldonado v. Ramirez,* 757 F.2d 48 (3rd Cir.1985). The moving party on a summary judgment motion meets its burden by affirmatively demonstrating from the record before the Court that there is no evidence to support an essential element of the nonmoving party's case. *Matter of Warner,* 65 B.R. 512 (Bkrtcy.S.D.Ohio 1986).

B. Subject Matter Jurisdiction.

1. Core and Related to Proceedings.

█ A Rule 12(b)(1) challenge to our subject matter jurisdiction does not place the burden of proof upon the movant. Rather, the burden remains upon the party asserting we have jurisdiction by a preponderance of the evidence. Additionally, a

Bankruptcy Court has the independent responsibility to make a 28 U.S.C. § 157(b)(3)[19] determination that this proceeding is or is not a "core" matter or otherwise "related to" the pending Title 11 case.

 We are entitled to review not only the pleadings but also matters outside the pleadings, including affidavits and documents before us, for competent evidence to resolve factual disputes about the existence of jurisdiction to hear an action. *See, Land v. Dollar*, 330 U.S. 731, 735, n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947) *overruled on other grounds, Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *Kamen v.*

*American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986); 2A *Moore's Federal Practice*, paragraph 12.07[2.1], at pp. 12–45–12–46 (2d Ed.1989). In the context of an adversary proceeding, we are entitled to review the bankruptcy case records and pleadings as well as the record of the adversary proceeding.

The United States Supreme Court's holding in *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and later cases, warn of constitutional problems caused by Article I Courts overreaching their jurisdictional limitations.

28 U.S.C. § 1334[20] and 28 U.S.C. § 157,[21] respectively, define the source of our sub-

---

19. 28 U.S.C. § 157(b)(3), **Procedures,** provides:
(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

20. 28 U.S.C. §§ 1334(a) and (b), **Bankruptcy Cases and Proceedings,** provide:
(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

21. 28 U.S.C. § 157, **Procedures,** provides in part:
(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.
(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
(2) Core proceedings include, but are not limited to—
(A) matters concerning the administration of the estate;
(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or

interest for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
(C) counterclaims by the estate against persons filing claims against the estate;
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
(K) determinations of the validity, extent, or priority of liens;
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and
(O) other proceeding affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.
(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law....
(4) Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall

ject matter jurisdiction and authority to enter orders. Four categories are provided by this jurisdictional scheme:

a) A case under Title 11;

b) A civil proceeding arising under Title 11;

c) A civil proceeding arising in a case under Title 11; and

d) A civil proceeding related to a case under Title 11.

*Taxel v. Commercebank (In re World Financial Services Center, Inc.)*, 64 B.R. 980, 982, 14 BCD 1306, 15 CBC.2d 836, 838 (Bkrtcy.S.D.Cal.1986). *See, Allis–Chalmers Corp. v. Borg–Warner Acceptance Corp. (In re Dr. C. Huff Co., Inc.)*, 44 B.R. 129, 134, 11 CBC.2d 1039, 40 UCCRS 284 (Bkrtcy.W.D.Ky.1984) (three classes of legal controversies: 1. core cases; 2. non-core related cases; and 3. non-core unrelated cases).

▮ Under 28 U.S.C. § 157(a), the District Court may provide that any or all cases under Title 11 and any or all proceedings arising in or related to a case under Title 11 may be referred to Bankruptcy Judges for the District. By Order dated July 10, 1984, the Honorable Robert J. Ward, Acting Chief Judge for the United States District Court for the Southern District of New York, made a blanket reference of all bankruptcy matters to the Bankruptcy Judges of this District.

The distinction between core and non-core is important in at least one respect, that being a Bankruptcy Court's ability to enter a final Order. 28 U.S.C. §§ 157(c)(1) and (2) provide that a Bankruptcy Judge may hear non-core proceedings that are

otherwise related to a case under Title 11, but may not enter a final Order or judgment without the consent of the parties. Instead, the Bankruptcy Judge must submit proposed findings of fact and conclusions of law for the District Court's de novo review. In a core matter we may enter a final Order. In some proceedings, we may determine the circumstances are appropriate for us to find that the parties consented to the entry of a final order despite the absence of an express consent.

The distinction between core and non-core should not be confused with our power to hear the matter. We have subject matter jurisdiction regardless of its core or non-core status. *See, In re WEFCO, Inc.*, 97 B.R. 749, 19 BCD 423 (E.D.N.Y.1989). The core or non-core distinction affects only our ability to enter a final Order.

"Core" is not defined, nor is it limited to the fifteen nonexclusive categories contained in 28 U.S.C. § 157(b)(2). Some Courts have confined themselves to a narrow approach in ascertaining the scope of what matters may be core, while others have taken a more expansive approach. *See, Atlas Fire Apparatus, Inc. v. Beaver (In re Atlas Fire Apparatus, Inc.)*, 56 B.R. 927, 932, 14 CBC.2d 429, 13 BCD 1304 (Bkrtcy.E.D.N.C.1986) (listing of representative cases within the two camps). In our Circuit the expansive approach applies. *See, Ben Cooper, Inc. v. The Insurance Company of the State of Pennsylvania (In re Ben Cooper, Inc.)*, 896 F.2d 1394, 1398–1399, 20 BCD 139, 22 CBC.2d 729 (2d Cir.1990) *vacated and remanded for a de-*

---

not be subject to the mandatory abstention provisions of section 1334(c)(2).

. . . . .

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court,

with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

*termination of proper appellate jurisdiction,* —— U.S. ——, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990).

 The mere characterization of an adversary proceeding within the core terms of 28 U.S.C. §§ 157(b)(2)(A)–(O) will not be dispositive of whether the proceeding is core. *Taxel v. Commercebank (In re World Financial Services Center, Inc.), supra,* 64 B.R. at 986, 15 CBC.2d at 843 (Bkrtcy.S.D.Cal.1986). For example, matters that are only tangentially related to the administration of the bankruptcy estate, may, in appropriate cases, be non-core related proceedings. *See, e.g., Wood v. Wood (In re Wood),* 825 F.2d 90, 96 (5th Cir.1987). Moreover, just because the resolution of some action may turn on the application of State law, this will not, *ipso facto,* turn the adversary proceeding into non-core proceeding. 28 U.S.C. § 157(b)(3); *Ben Cooper, Inc. v. The Insurance Company of the State of Pennsylvania (In re Ben Cooper), supra,* 896 F.2d at 1400 (2d Cir.1990); *Mann v. Kreiss (In re Kreiss),* 58 B.R. 999, 1004 (E.D.N.Y.1986); *In re Tom Carter Enterprises, Inc.,* 44 B.R. 605, 609, 12 BCD 536, 11 CBC.2d 1216 (C.D.Cal. 1984).

We are ever mindful of *Marathon's* plurality holding and Article III proscriptions:

> [T]he 'adjunct' bankruptcy courts created by the Act [1978, 28 U.S.C. § 1471] exercise jurisdiction behind the facade of a grant to the district courts, and of exercising powers far greater than those lodged in the adjuncts approved in either *Crowel [Crowel v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932) ] or *Raddatz [U.S. v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ].

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 87, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982) (brackets supplied for clarity). As one Court interpreted *Marathon:*

> [T]he constitutional ability of an adjunct bankruptcy court to determine state law issues is to be determined by the nature and extent of control by Article III courts and whether there is a nexus between the proceeding involving a state

law cause of action and the bankruptcy estate.

*Lessor v. A–Z Associates (In re Lion Capital Group),* 46 B.R. 850, 856, 12 BCD 840, 12 CBC.2d 59 (Bkrtcy.S.D.N.Y.1985), *aff'd,* 63 B.R. 199 (S.D.N.Y.1985). *See also, Salomon v. Kaiser (In re Kaiser),* 722 F.2d 1574, 1582, 11 BCD 529, 9 CBC.2d 910 (2d Cir.1983); *Mann v. Kreiss (In re Kreiss),* 58 B.R. 999, 1004 (E.D.N.Y.1986); *In re Satelco,* 58 B.R. 781, 786, 14 BCD 201, 14 CBC.2d 487 (Bkrtcy.N.D.Tex.1986).

> *Marathon* only invalidated the jurisdiction of the bankruptcy court to make final determinations in matters that could have been brought in a district court or a state court (i.e., 'related proceedings')…. [I]n no way did *Marathon* implicate the jurisdiction of the bankruptcy courts in other matters within the 'traditional' bankruptcy jurisdiction. The Court's invalidation of the jurisdictional grant was on separability grounds, not on the grounds that bankruptcy courts could not adjudicate traditional bankruptcy matters.

*Salomon v. Kaiser (In re Kaiser),* 722 F.2d 1574, 1580, 11 BCD 529, 9 CBC.2d 910 (2d Cir.1983) (citation and footnote omitted).

The majority of Courts have held a party's post-petition contract dispute with a debtor-in-possession is a core matter under 28 U.S.C. §§ 157(b)(2)(A) "matters concerning the administration of the estate," (b)(2)(E) "orders to turn over property of the estate," or, (b)(2)(O) "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor creditor…." *See, Ben Cooper, Inc. v. The Insurance Company of the State of Pennsylvania (In re Ben Cooper, Inc.), supra,* 896 F.2d at 1398–1399, (2d Cir.1990) (held post-petition contract is core; rejects *In re Castlerock Properties,* 781 F.2d 159 (9th Cir.1986) and *In re Wood,* 825 F.2d 90, 97 (5th Cir.1987)). *See, e.g., Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.),* 815 F.2d 165, 168 (1st Cir. 1987) (DIP's post-petition action to collect a post-petition account receivable was a core matter); *Pester Refining Co. v. Mapco*

Gas Products, Inc. (In Matter of Pester Refining Co.), 66 B.R. 801, 817–18 (Bkrtcy. S.D.Iowa 1986) (conversion claim brought by estate against a pre-petition creditor who converted property of the estate post-petition was core), aff'd, Matter of Pester Refining Co., 85 B.R. 520 (S.D.Iowa 1987), aff'd in part and rev'd in part on other grounds, 845 F.2d 1476 (1988); Edgcomb Metals Co. v. Eastmet Corp., 89 B.R. 546, 554 (D.Md.1988) (held buyer who knowingly contracts with a DIP is deemed to have consented to Bankruptcy Court's jurisdiction, and a suit on a post-petition contract with DIP is a core matter); Hershman v. Thorne, Grodnik & Ransel (In Matter of Stockert Flying Service, Inc.), 74 B.R. 704, 708 (N.D.Ind.1987) (creditor's claim against debtor's attorney for mishandling debtor's estate assets was a core matter). See, Associated Grocers of Colorado, Inc. v. Tempora Corp. (In re Associated Grocers of Colorado, Inc.), 97 B.R. 39, 41 (Bkrtcy. D.Colo.1989) (post-petition accounts receivable action was core); Bass v. Millican (In re Telemarketing Communications), 95 B.R. 794 (Bkrtcy.D.Colo.1989) (debtor's damage action which arose out of a post-petition contract for the sale of assets was core); In re Standard Metals Corp., 97 B.R. 593, 596 (Bkrtcy.D.Colo.1988) (post-petition contract dispute over sale of major asset to fund debtor's reorganization was core); Meininger v. Swasey (In re Sarasota Casual, Inc.), 90 B.R. 496, 498 (Bkrtcy. M.D.Fla.1988) (trustee's action for breach of post-petition contract was core); Germain v. Connecticut National Bank (In Matter of O'Sullivan's Fuel Oil Co., Inc.), 88 B.R. 17, 20 (D.Conn.1988) (Chapter 7 trustee's action against a bank under causes of action that occurred predominately post-petition was core); J.B. Van Sciver Co. v. William Cooper Associates, Inc. (In re J.B. Van Sciver Co.), 73 B.R. 838, 844, 16 CBC.2d 1179 (Bkrtcy.E.D.Pa.1987) (action for breach of Court approved post-petition real estate sales agreement was core); Canadian Shield Financial Corp.

Ltd. v. Estate of Deutscher (In re Vincent), supra, 68 B.R. 865, 869 (Bkrtcy. M.D.Tenn.1987) (State law claims against officer created by plan of reorganization was core); National Equipment & Mold Corp. v. Capital, Inc. (In re National Equipment & Mold Corp.), 71 B.R. 24, 27 (Bkrtcy.N.D.Ohio 1986) (Chapter 7 trustee's assumption of an action previously brought by the DIP on a post-petition claim to recover funds placed in escrow as part of a contemplated loan under reorganization that did not materialize was core); Gray Line of Boston, Inc. v. Sheraton Boston Corp. (In re Gray Line of Boston, Inc.), 62 B.R. 811, 813 (Bkrtcy.D.Mass. 1986) (dispute over terms of a Court ordered stipulation on a post-petition lease agreement was core). But see, Kolinsky v. Russ (In re Kolinsky), 100 B.R. 695, 702, 19 BCD 686 (Bkrtcy.S.D.N.Y.1989) (action to rescind a post-petition contract for sale of real property by non-debtor corporation wholly owed by debtor was not a core proceeding but was "related to" and within the Court's jurisdiction).

As for the Bankruptcy Court's related jurisdiction, in Turner v. Ermiger (In re Turner), 724 F.2d 338, 341, 11 BCD 728, 10 CBC.2d 782 (2d Cir.1983), the Second Circuit Court of Appeals applied a narrow holding of "related to" jurisdiction requiring a showing of any "significant connection" to the debtor's bankruptcy. In Turner, a Chapter 11 debtor had claimed as exempt a contingent cause of action for conversion against her landlord. Afterwards, the debtor filed a complaint against the landlord in Bankruptcy Court. The District Court found jurisdiction to be "related to" under the then existing Emergency Resolution,[22] as within the definition of " 'those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court.' " Id., 724 F.2d at 340 (quoting District Court). After noting that the debtor had already exempted the action and pursued it in her own name, the Second

---

**22.** The Emergency Resolution adopted by Order in the Northern District for the District of New York dealt with the Marathon, supra, problems. 724 F.2d at 340. See, In re Kaiser, 722 F.2d 1574, 1581 (2d Cir.1983) (upholding similar rule of the Southern District for the District of New York).

Circuit reversed and instructed the District Court to dismiss debtor's complaint for want of jurisdiction because:

> There is no suggestion that the proceeds would be turned over to the trustee, or accounted for to [trustee], and the judgment below orders [landlord] to pay damages directly to [debtor]. Failure to recover on the claim could not increase [debtor's] exemption claim under § 522(d) of the Code since [debtor's] exemptions had already exhausted the estate. On these facts, there is no showing that [debtor's] action against [landlord] had any *'significant connection'* with [debtor's] bankruptcy case. It therefore falls outside the scope of § 1471(b),[23] which allows the district courts to conduct civil proceedings 'related to' cases under Title 11.

*Id.*, 724 F.2d at 341 (emphasis supplied). *See, Gordon v. Shirley Duke Associates, A.P.I. (In re Shirley Duke Associates)*, 611 F.2d 15, 18, 21 CBC.2d 857 (2d Cir.1979) (under Bankruptcy Act of 1898, as amended, Bankruptcy Court has no jurisdiction to decide controversies between third parties that do not involve the debtor or debtor's property, unless the Court cannot complete its administrative duties without resolving the controversy).

The Third Circuit provides us with the popular definition of a "related to" jurisdiction which appears to be broader in scope than *Turner's* "significant connection:"

> The usual articulation of the test for determining whether a civil proceeding is related to a bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy....* An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

*In re Pacor, Inc. v. Higgins*, 743 F.2d 984, 994, 12 BCD 285, CCH BLR Para. 70002

(3d Cir.1984) (emphasis in original). *Accord, Bobroff v. Continental Bank (In re Bobroff)*, 766 F.2d 797, 802, 13 BCD 502, CCH BLR Para. 70630 (3d Cir.1985). *See, Fietz v. Great Western Savings (In re Fietz)*, 852 F.2d 455, 457, CCH BLR Para. 72420 (9th Cir.1988); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93, 17 CBC.2d 743, CCH BLR Para. 71955 (5th Cir.1987); *Elscint, Inc. v. First Wisconsin Financial Corp. (Matter of Xonics, Inc.)*, 813 F.2d 127, 131, n. 2, 17 CBC.2d 230, CCH BLR Para. 71695 (7th Cir.1987); *Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.)*, 810 F.2d 782, 786, CCH BLR Para. 71616 (8th Cir.1987). *See also, A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.)*, 788 F.2d 994, 1002 n. 11, 14 BCD 752, 15 CBC 2d 235, CCH BLR 71094 (4th Cir.1986) *(dicta)*, cert. denied, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).

 There is merit to GACC's position that its action against Defendants is core. Although GACC's and Defendants' agreements were entered into pre-petition, GACC's cause of action against Defendants accrued post-petition. The GACC causes of action against Defendants are based on the Production Notes or the Assumption Agreements executed by Defendants as Limited Partners. The Production Notes were not due and payable until December 31, 1999 and could be accelerated under the terms of the Assignment and Security Agreement if the Partnerships defaulted on one of the Short Term Notes to GACC. The Texcat Partnership did not default on its obligation under the Short Term Notes until April 30, 1984, when it failed to pay the second of the Short Term Notes. Thus, it was not until April 30, 1984, six months after GACC had filed a petition for bankruptcy, that the GACC causes of action accrued against Defendants because it was then, and only then, that GACC could accelerate the due date on the Production Notes. As post-petition causes of action, we find this proceeding is "core" because it concerns the administration of the estate. The enforcement of the Assumption Agree-

---

**23.** 28 U.S.C. § 1471 was the forerunner of present day 28 U.S.C. § 1334.

ments is GACC's means of collecting assets for distribution to its creditors.

As an alternative to our core determination, we have "related to" jurisdiction over these actions. GACC's causes of action are related to because their outcome has a significant impact on its bankruptcy. GACC's causes of action are the sole remaining source of income for its bankruptcy estate.

2. Jury Demand.

■■■ Assuming the District Court accepts our recommendation that discretionary abstention is not appropriate and as long as these proceedings are before the District Court, the District Court must next determine whether it agrees with our determination that these proceedings are core

because Defendants have not submitted proofs of claim in GACC's bankruptcy case.

The importance of whether these proceedings are "core," "related to," or "non-related to" can not be underscored enough when it comes to the issue of whether the Bankruptcy Court or the District Court is the appropriate place to conduct a trial by jury.

Presently, there is no jury rule under Part V Courts and Clerks, Part VII Adversary Proceedings, or Part IX General Provisions of the Bankruptcy Rules that is comparable to Federal Rules of Civil Procedure Rules 38 and 39.[24]

The United States Supreme Court has given us guidance in determining when a Bankruptcy Court may conduct a jury trial. A trial by jury may be conducted in Bank-

---

24. F.R.Civ.P. Rule 38, **Jury Trial of Right,** provides in pertinent parts:

(a) **Right Preserved.** The right of trial by jury as declared by the Seventh Amendment of the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate.

(b) **Demand.** Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party.

. . . . .

(d) **Waiver.** The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by the party of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

. . . . .

F.R.Civ.P. Rule 39, **Trial by Jury or by the Court,** provides in pertinent parts:

(a) **By Jury.** When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury or (2) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution of the United States.

(b) **By the Court.** Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the

failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

. . . . .

The Advisory Committee note to Rules of Practice and Procedure in Bankruptcy Rule 7001 notes that Part VII Adversary Proceedings incorporates or adopts most of the Federal Rules of Civil Procedure. Neither F.R.Civ.P. Rule 38, nor 39, is incorporated or adopted in Part VII. The Advisory Committee note to Bankruptcy Rule 7001 lists Bankruptcy Rule 9015 as the comparable rule to F.R.Civ.P. Rules 38 and 39. Bankruptcy Rule 9015 was abrogated in 1987. The Advisory Committee commented in its note to the 1987 Amendment of former Bankruptcy Rule 9015:

Former section 1480 of title 28 preserved a right to trial by jury in any case or proceeding under title 11 in which a jury trial was provided by statute. Rule 9015 provided the procedure for jury trials in bankruptcy courts. Section 1480 was repealed. Section 1411 added by the 1984 amendments affords a jury trial only for personal injury or wrongful death claims, which 28 U.S.C. § 157(b)(5) requires be tried in the district court. Nevertheless, Rule 9015 has been cited as conferring a right to jury trial in other matters before the bankruptcy judges. In light of the clear mandate of 28 U.S.C. § 2075 that the 'rules shall not abridge, enlarge, or modify any substantive right,' Rule 9015 is abrogated. In the event the courts of appeals or the Supreme Court define a right to jury in any bankruptcy matters, a local rule in substantially the form of Rule 9015 can be adopted pending amendment of these rules.

ruptcy Court over core proceedings where the defendant has not filed a proof of claim. *See, Langenkamp v. C.A. Culp,* — U.S. ——, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) *per curiam,* (held creditors do not have a right to a trial by jury when sued by bankruptcy trustee for preferential transfers if creditors also filed claims against a bankruptcy estate because of the Bankruptcy Court's "equitable jurisdiction.").

In the proceeding *sub judice,* Defendants have not filed proof of claims. Thus, if the District Court accepts our recommendation of non-abstention and also accepts our recommendation that these proceedings are "core," then the Bankruptcy Court may conduct a trial by jury. *Perino v. Cohen (In re Cohen),* 107 B.R. 453, 455 (S.D.N.Y.1989).

If, however, the District Court determines GACC's and Defendants' causes of action are "relate to," we recommend our reference be withdrawn and these proceedings be tried before a jury in the District Court.

■ There are three scenarios where the Bankruptcy Court ought not entertain a timely general demand for a trial by jury: First, where there is a core matter and the defendants have submitted proof of claims

against the bankruptcy estate; Second, in the absence of 28 U.S.C. § 157(c)(2) consent to our jurisdiction and final determination over "non-core related" matters; or, Third, despite any efforts by the parties to confer consent to our jurisdiction over non-pendant or non-ancillary "non-core non-related" matters where Bankruptcy Courts are powerless to enter a final Order. Our refusal to entertain a jury demand in the first situation is governed by *Langenkamp, supra.* Our refusal in the second situation is in the exercise of our discretion to avoid a useless application of our judicial resources when the District Court should hear and determine the proceeding with finality.[25] Our refusal in the third situation is the result of our lack of subject matter jurisdiction.

### C. *In Personam* Jurisdiction.

■ Although Defendants failed to reply to GACC's motion for summary judgment on this issue, one of Defendants affirmative defenses is that we lack *in personam* jurisdiction over them. We need not be detained long here because we have a "Federal Question" and nationwide service of process under Rules of Practice and Procedure in Bankruptcy Rule 7004.[26]

---

**25.** Bankruptcy Judge Marro so aptly stated:
It would be an exercise in futility for the Bankruptcy Court to conduct a hearing [on a "non-core related" matter] solely for the purpose of submitting proposed findings and conclusions of law to the District Court only to have this hearing followed by a jury trial on the same issues.
*Palmisano v. Briggs (In re Northern Design, Inc.),* 53 B.R. 25, 27 (Bkrtcy.D.Vt.1985). Accord, *Reda, Inc. v. Harris Trust & Savings Bank (Matter of Reda, Inc.),* 60 B.R. 178, 183 (Bkrtcy. N.D.Ill.1986); *Craig v. Air Brake Controls, Inc. (In re Crabtree),* 55 B.R. 130, 133 (Bkrtcy. E.D.Tenn.1985).

**26.** Rules of Practice and Procedure in Bankruptcy Rule 7004, **Process; Service of Summons, Complaint,** provides in pertinent parts:
**(a) SUMMONS; SERVICE; PROOF OF SERVICE.** Rule 4(a), (b), (c)(2)(C)(i), (d), (e) and (g)–(j) F.R.Civ.P. applies in adversary proceedings. Personal service pursuant to Rule 4(d) F.R.Civ.P. may be made by any person not less than 18 years of age who is not a party and the summons may be delivered by the clerk to any such person.

**(b) SERVICE BY FIRST CLASS MAIL.** In addition to the methods of service authorized by Rule 4(c)(2)(C)(i) and (d) F.R.Civ.P., service may be made within the United States by first class mail postage prepaid as follows:

. . . . .

(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

. . . . .

(7) Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if a copy of the summons and complaint is mailed to the entity upon whom service is prescribed to be served by any statute of the United States or by the law of the state in which service is made when an action is brought against such defendant in the court of general jurisdiction of that state.

Even assuming *arguendo* Defendants do not have contact with the forum State, nevertheless, the Bankruptcy Court has in personam jurisdiction over nonresident Defendants because these adversary proceedings arise under the laws of the United States. The "minimum contact test," applied to a State and a defendant, has no relevance here because, as we have already explained, § 1334 provides us with "federal question" jurisdiction. *Diamond Mortgage Corp. of Illinois v. Sugar*, 913 F.2d 1233, 1244 (7th Cir.1990) (State minimum contact test not relevant where § 1334 provides the federal question jurisdiction and Bankruptcy Rule 7004 allows nationwide service of process). *See, Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir.1974) (Where defendants reside within the territorial boundaries of the United States, "minimum contracts" required to justify jurisdiction are present, subject of course to the constraints of the Fifth Amendment. Stating also that Congressional power to authorize nationwide service of process in cases involving the enforcement of Federal law is beyond question.). *But see, Cannon v. Gardner–Martin Asphalt Corp. Retirement Trust Profit Sharing Plan*, 699 F.Supp. 265, 267–68 (M.D.Fla.1988) (in Federal Question case in which nonresident defendant is served by nationwide service of process, Fifth Amendment due process "minimum contacts" analysis requires that contacts with State in which Federal Court sits must also be considered).

The presence of a Federal Question requires that we apply a Federal "minimum contact" test rather than a State "minimum contact" test. Title 11 provides us with the Federal question.

Assuming *arguendo* GACC's proceedings are merely "related to," we would still reject Defendants' inclusion of a requirement that it be amendable to process under a State law "minimum contact" test. Although such a test may be appropriate in a diversity action, a "related to" matter is ancillary to the underlying Federal question of the bankruptcy action. Thus, we still have the presence of a Federal Question and a Federal "minimum contact" rule applies. *Chemical Bank v. Grisby's World of Carpet, Inc. (In re WWG Industries, Inc.)*, 44 B.R. 287, 290, 12 BCD 752, 12 CBC.2d 282 (N.D.Ga.1984); *Stewart v. Strasburger (In re Astrocade, Inc.)*, 79 B.R. 983, 984–85 (Bkrtcy.S.D.Ohio 1987); 1 *Norton Bankr.L. & Prac.*, § 5.34, p. 183, at 184 (1989). Accordingly, we are dealing with the first sentence of F.R.Civ.P. Rule 4(e) [27] which renders the second sentence of F.R.Civ.P. Rule 4(e) inapplicable and the State "minimum contact" test irrelevant.

Nationwide service of process is provided for a Bankruptcy Court under Bankruptcy Rules of Practice and Procedure in Bankruptcy, Rule 7004. Thus, we reject Defendants' affirmative defenses that we lack personal jurisdiction over this Federal

(8) Upon any defendant, it is also sufficient if a copy of the summons and complaint is mailed to an agent of such defendant authorized by appointment or by law to receive service of process, at the agent's dwelling house or usual place of abode or at the place where the agent regularly carries on a business or profession and, if the authorization so requires, by mailing also a copy of the summons and complaint to the defendant as provided in this subdivision.

**(d) NATIONWIDE SERVICE OF PROCESS.** The summons and complaint and all other process except a subpoena may be served anywhere in the United States.

27. F.R.Civ.P. Rule 4(e) provides:

**(e) Summons: Service Upon Party Not Inhabitant of or Found Within State.** When ever a statute of the United States or an order of

court thereunder provides for service of summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, or (2) for service upon or notice to such a party to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of the party's property located within the state, service may in either case be made under the circumstances and in the manner prescribed in the statute or rule.

Question matter because once it has been shown a defendant has been properly served under Bankruptcy Rule 7004 and that a defendant resides within the United States, we may exercise in personam jurisdiction over that defendant. *See, Nordberg v. Granfinanciera (In re Chase & Sanborn Corp.)*, 835 F.2d 1341, 1344 (11th Cir.1988), *rev'd and remanded on other grounds, Grandfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); *Teitelbaum v. Choquette & Co., Inc. (In re Outlet Department Stores, Inc.)*, 82 B.R. 694, 699 (Bkrtcy.S.D.N.Y.1988).

### CONCLUSION

We recommend the District Court for the Southern District of New York deny abstention because, *inter alia*, Defendants' Texas State Court action against GACC was commenced in violation of 11 U.S.C. § 362 and is void *ab initio*. Thus, there is no pending State Court action to abstain from. We deny Defendants' request for a Rule 5011(c) stay because continued delay of these adversary proceedings prejudices the administration of GACC's bankruptcy estate. We also deny Defendants' request for relief from the automatic stay under 11 U.S.C. § 362(d) because they failed to sustain their burden of proof of entitlement.

We grant summary judgment on the issue of our subject matter jurisdiction, *in personam* jurisdiction, and whether these proceedings may be "core" or "related to" because we are required to make such determinations under 28 U.S.C. § 157(b)(3) and because our experience has been that the District Court usually requests our view.

We grant GACC summary judgment against Defendants' affirmative defense of lack of subject matter and *in personam* jurisdiction over GACC's proceedings because we have subject matter jurisdiction and nationwide *in personam* jurisdiction over Defendants and the presence of a "Federal Question" under § 1334.

We determine GACC's proceedings against Defendants are "core" because GACC's causes of action against Defendants accrued post-petition, thus we have power to enter a final Order and a trial by jury is appropriate because Defendants have not filed proof of claims in GACC's bankruptcy case. We accept Defendants' position that we have subject matter jurisdiction and core power to enter a final Order on their counterclaim. We likewise determine a trial by jury is appropriate on Defendants' counterclaims.

As an alternative to our core determination, GACC's and Defendants' proceedings are "related to" GACC's bankruptcy because the outcome of such proceedings has a significant impact on GACC's ability to pay its creditors. In this event, however, we recommend the District Court withdraw our reference over these proceedings because of Defendants' jury demand, and try these proceedings in the District Court before a jury.

We do not reach summary judgment on the following issues until, and unless, the District Court accepts our recommendation to deny abstention and determine these proceedings are "core:" whether the judgment entered in a Federal District Court action against the Partnerships also binds Defendants as the Partnerships' Limited Partners; whether Defendants' counterclaims of fraud and breach of contract, defective merchantability, and declaratory judgment are barred by res judicata; or, whether GACC is entitled to summary judgment on its cause of action against Defendants.

DATED at Rutland, Vermont this 26 day of November, 1990.

### ORDERS

The Court having this date entered its Recommendation to District Court for the Southern District of New York to not abstain on the above adversary proceedings, It is *Ordered* that the parties have ten (10) days from the date of docketing and service of our report and recommendation to serve and file their objections in the manner required under Bankruptcy Rules 5011 and 9033(b).

Further, the Court having this date entered its Memorandum of Decision on Denial of Rule 5011(c) Stay; Denial of Relief From § 362 Automatic Stay; and Granting of Summary Judgment in Part and Denial of Sumary Judgment in Part, hereby *Orders* Defendants' Rule 5011(c) motion is denied; *Orders* Defendants' request for relief from the automatic stay is Denied; *Orders* GACC's summary judgment on the issues of our subject matter and *in personam* jurisdiction are Granted; and, *Orders* a denial of the balance GACC's summary judgment motion.

Further, the Court hereby sets a status conference to be held on the above adversary proceedings on February 13, 1991.

DATED at Rutland, Vermont this 26 day of November, 1990.