In re: Fred LANE, Jr., Debtor.

Stuart M. BERNSTEIN, Chapter 7 Trustee of the Estate of Fred Lane, Jr., Plaintiff,

v.

GREENPOINT SAVINGS BANK, Manufacturers Hanover Trust Company and Glen Head First National Bank, Defendants.

Bankruptcy No. 191–17010–260.
Adv. No. 192–1025.

United States Bankruptcy Court, E.D. New York.

Jan. 27, 1993.

Kensington & Ressler, P.C., by Wendy Kaufman Goidel, New York City, for trustee.

Cullen & Dykman by John P. McEntee, Brooklyn, NY, for Greenpoint Sav. Bank and Glen Head First Nat. Bank.

Harold Monyak, Brooklyn, NY, for debtor.

### DECISION

CONRAD B. DUBERSTEIN, Chief Judge.

DECISION ON MOTION FOR SUMMARY JUDGMENT SEEKING A TURN-OVER OF FUNDS ON DEPOSIT IN ALLEGED KEOGH PLANS IN THE POSSESSION OF GREENPOINT SAVINGS BANK AND GLEN HEAD FIRST NATIONAL BANK

This is an adversary proceeding in which Stuart M. Bernstein, Esq., the Chapter 7 Trustee of the estate of Fred Lane, Jr. (the "Trustee"), is the Plaintiff seeking a turnover of funds on deposit in the Greenpoint Savings Bank (Greenpoint), Manufacturers Hanover Trust (MHT), and Glen Head First National Bank (First National), the defendants herein.

This matter came before the Court on the Trustee's motion for summary judgment pursuant to Fed.R.Civ.P. 56, made applicable to bankruptcy proceedings pursuant to Fed.R.Bankr.P. 7056. For the reasons stated below, the Trustee's motion for summary judgment is granted.

### FACTS

On October 25, 1991, Fred Lane, Jr., the debtor, ("Lane" or the "Debtor") a self-employed dentist, filed a petition for relief under Chapter 7 of the Bankruptcy Code. Listed in the schedules of property accompanying his petition are an Individual Retirement Account ("IRA") maintained by him at Greenpoint, a checking account maintained by him at MHT, and two Keogh plan accounts maintained by him, one at Greenpoint (the "Greenpoint Plan") and the other at First National (the "First National Plan"). Initially, the Debtor did not claim the funds on deposit in these accounts as exempt property.

By establishing the Keogh plans, the Debtor agreed that the plans would be bound by the terms of certain documents titled "The First National Bank of Long Island Retirement Plan (For Self Employed Individuals, Partners and Corporations)" and Greenpoint's "Prototype Defined Contribution Plan and Trust for Self–Employeds and Corporations."

Pursuant to both the Greenpoint Plan and the First National Plan, the Debtor's employees are required to receive a contribution for each plan year based on a percentage of their compensation. The Debtor's tax returns for the years 1989, 1990 and 1991 reflect that he paid wages to his employees in the amounts of $34,100, $37,995 and $35,000, respectively. However,

the account statements provided by Greenpoint and First National show that the Debtor failed to make any contributions on behalf of his employees during those years. In addition, during a Fed.R.Bankr.P. 2004 examination, the Debtor conceded that he had not made any contributions to the Greenpoint account on behalf of the employees. (Tr. of examination of Fred Lane, Jr. on March 18, 1992 at 27–28). Contributions to the Greenpoint and First National Plans were made solely on his own behalf. *Id.*

As of December 31, 1991, the amount in the Greenpoint Plan was $110,383.97, and the amount in the First National Plan was $267,242.12. Additionally, the amount in the Greenpoint IRA was $27,556.27.

On January 23, 1992, the Trustee commenced an adversary proceeding against Greenpoint, MHT and First National, alleging that the funds on deposit in the IRA, Keogh and checking accounts constitute property of the Debtor's estate and should be turned over to the Trustee pursuant to § 541 of the Code. Shortly thereafter, MHT turned over the monies on deposit in the Debtor's checking account and the Trustee discontinued the action against it.

On May 19, 1992, the Trustee filed the present motion for summary judgment. On September 14, 1992, this Court granted the Trustee's motion to the extent that the funds on deposit in the Debtor's IRA at Greenpoint constitute property of the estate. Greenpoint was directed to immediately turn over and surrender to the Trustee all of the assets and property of the estate in its possession regarding the IRA. The Court reserved decision on the portion of the Trustee's motion seeking a turnover of funds in the Debtor's purported Keogh plans.

The Trustee argues that, due to the Debtor's failure to make contributions on behalf of his employees, neither the Greenpoint Plan nor the First National Plan constitute qualified trusts as required by § 401 of the United States Internal Revenue Code ("IRC"). Accordingly, the Trustee alleges that the Greenpoint and First National accounts are mere bank accounts masquerading under the name "Keogh" and therefore, the funds on deposit therein must be turned over to the Trustee for distribution to creditors.

## DISCUSSION

### I. *Motion for Summary Judgment*

■ A motion for summary judgment is governed by Fed.R.Civ.P. 56, made applicable to bankruptcy proceedings pursuant to Fed.R.Bankr.P. 7056, which provides in pertinent part:

[T]he judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56. In ruling on a motion for summary judgment, the court's function is to determine whether a genuine issue as to any material fact exists, not to resolve any factual issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986); *Eastman Machine Co. v. United States*, 841 F.2d 469 (2d Cir.1988); *In re Kenston Management Co.*, 137 B.R. 100, 108 (Bankr.E.D.N.Y.1992); *In re Sapru*, 127 B.R. 306, 319 (Bankr.E.D.N.Y.1991). The court must deny summary judgment where there is a genuine issue as to any material fact, and grant summary judgment where there is no such issue and the movant is entitled to judgment as a matter of substantive law. *Anderson*, 477 U.S. at 247–52, 106 S.Ct. at 2506–11; *Hamilton v. Smith*, 773 F.2d 461, 466 (2d Cir.1985); *In re Katz*, 146 B.R. 617, 619 (Bankr.E.D.N.Y.1992); *In re American Motor Club, Inc.*, 143 B.R. 590, 596 (Bankr.E.D.N.Y.1992).

■ The movant bears the burden of proving the absence of any genuine issue as to all material facts which entitle him to summary judgment. *Sapru*, 127 B.R. at 319; *In re F & L Plumbing & Heating Co.*, 114 B.R. 370, 374 (E.D.N.Y.1990).

Once this initial burden is met, the opposing party must set forth specific facts showing not only that there is a genuine issue for trial, but also that the disputed fact is material. *In re General American Communications Corp.*, 130 B.R. 136, 152 (S.D.N.Y.1991); *F & L Plumbing*, 114 B.R. at 374. Therefore, the opposing party may not merely rely upon the contentions of its pleadings, but must produce significant evidence to support its position. *General American Communications*, 130 B.R. at 152. *See also First Nat. Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968), *reh. denied*, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968); *United States v. Pent–R–Books, Inc.*, 538 F.2d 519 (2d Cir.1976), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977).

■ In addition, when determining whether there is a genuine issue of material fact, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). As the Supreme Court in *Anderson v. Liberty Lobby, Inc.* stated:

> [T]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other[,] but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict— "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it...." *Improvement Co. v. Munson*, 14 Wall. 442, 228 [20 L.Ed. 867] (1872).

*Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. From the pleadings and supporting memoranda filed in this proceeding, it is this Court's conclusion that there is no genuine issue of material fact.

## II. *Property of the Estate*

■ The filing of a petition in bankruptcy creates an estate consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The legislative history of § 541 indicates that this provision was intended to be interpreted in broad scope. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983) (citing S.Rep. No. 95–989, p. 82 (1978); and H.R.Rep. 95–595, pp. 367–368 (1977)), U.S.Code Cong. and Admin.News 1978, pp. 5787–5868, 6323–24. A debtor's interest in a pension plan constitutes property of the estate unless the interest is excluded or exempted from the estate pursuant to § 541(c)(2) or § 522(b)(1) of the Bankruptcy Code.

### A. *Section 541(c)(2)*

Section 541(c)(2) contains an exception for property that is subject to an enforceable restriction on transfer:

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c)(2).

■ As the Supreme Court has recently determined, "the natural reading of this provision entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law." Accordingly, the phrase "applicable nonbankruptcy law" in § 541(c)(2) includes federal as well as state law. *Patterson v. Shumate*, —— U.S. ——, ——, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992). Should state or federal law require that an enforceable restraint be placed on alienation of the Debtor's beneficial interest in the trust res, § 541(c)(2) operates to exclude such interest from the property of the estate. *In re Nudo*, 147 B.R. 68, 71 (Bankr.N.D.N.Y.1992). *See In re Lucas*,

924 F.2d 597, 600 (6th Cir.1991) (property of the debtor that falls within the definition of § 541(c)(2) is excluded from the debtor's estate).

■ The Self–Employed Individual's Tax Retirement Act of 1962, Pub.L. 87–792, 76 Stat. 809 (Codified as amended in various sections of 26 U.S.C.), permits a self-employed individual to establish his own pension plan (commonly called a "Keogh" Plan after the name of the author of the bill) and to qualify for certain favorable tax benefits. *See* S.Rep. No. 992, 87th Congress, 2d Sess. 1 *reprinted in* 1962 U.S.Code Cong. & Ad.News 2964. In order to qualify for these tax benefits, payment has to be made to a pension plan which complies with certain provisions of the IRC. In the IRC's parlance, the plan would then be deemed a "qualified plan". Furthermore, both the First National Plan and the Green Point Plan define a "qualified retirement plan" as an "employee benefit plan" which has received a favorable opinion or determination letter from the Internal Revenue Service with respect to its qualification under § 401 of the IRC. First National Plan ¶ 1.27; Greenpoint Plan ¶ 2.44.

In order for a plan to be qualified, there must be no discrimination in contributions or benefits in favor of employees who are officers, shareholders, supervisors, or highly-compensated, as against other employees whether within or without the plan. A self-employed individual, by reason of the contingent nature of his compensation, is considered to be a highly compensated employee, and thus is a member of the group in whose favor discrimination is prohibited.

Treas.Reg. § 1.41–11(d)(1). Therefore, the IRC "requires such self-employed individuals to provide benefits for their employees on a nondiscriminatory basis." Treas.Reg. § 1.401–11(b)(2).

In order to effectuate this nondiscrimination policy, the IRC sets forth very specific rules on contributions. *Bernard McMenamy Contractor, Inc. v. Commissioner of Internal Revenue*, 54 T.C. 1057, 1060 (1970), *aff'd*, 442 F.2d 359 (8th Cir.1971) (§ 401(a)(3) deals with employees covered by a qualified plan and prohibits discrimination in favor of employees, officers, shareholders, persons whose principal duties consist of supervising the work of other employees, or highly compensated employees). If at any time the purported plan fails to satisfy the required nondiscrimination requirements, it would not be deemed "qualified" for that year. *Boggs v. Commissioner of Internal Revenue*, 784 F.2d 1166, 1169 (4th Cir.1986).

Section 401(a)(10)(B) of the IRC provides that "a trust forming part [of a "top-heavy"] plan shall constitute a qualified trust under this section only if the requirements of § 416 are met." 26 U.S.C. § 401(a)(10)(B)(i). Section 416(a) of the IRC provides that:

A trust shall not constitute a qualified trust under section 401(a) for any plan year if the plan by which it is a part is a top-heavy plan for such plan year unless such plan meets—

 1. the vesting requirements of subsection (b),

 2. the minimum benefit requirement of subsection (c), and

 3. the limitation on compensation requirement of subsection (d).

26 U.S.C. § 416(a) (1992). Pursuant to § 416(g), a plan is "top-heavy" if the sum of the account balance of all the defined contribution plans maintained by the employer and, if the employer also maintains a defined benefit plan, the present value of accrued benefits under the defined benefit plan of certain "key-employees"[1], exceeds 60% of the account balances under the defined contribution plans and the present

---

**1.** Pursuant to the pension plans from both First National Bank and Greenpoint Bank, a "key employee" is an employee who is: (1) an officer of the employer (subject to a maximum number of officers and a minimum salary requirement); (2) one of ten employees owning the largest interest in the employer (subject to a minimum ownership requirement and a minimum salary requirement; (3) a 5% owner of the employer; or (4) a 1% owner of the employer with annual compensation in excess of $150,000. First National Bank ¶ 1.16; Greenpoint Plan ¶ 2.26. *See also* 26 U.S.C. § 416(i)(A).

value of accrued benefits under the defined benefit plan for all employees. 26 U.S.C. § 416(g)(1)(A)(i–ii) (1992).

 In the case before this Court, the Debtor's plans are "top-heavy" as that term is defined in both the IRC, the First National Plan and the Greenpoint Plan. *See* First National Plan ¶¶ 1.35 and 1.36; Greenpoint Plan ¶ 5.03. Inasmuch as both Keogh plans are "top-heavy", the debtor, as employer, is obligated to make specific minimal contributions on behalf of his "regular employees".[2] Specifically, the First National Plan requires that regular employees receive an allocation for each plan year equal to either 3% or 5% of the employee's compensation, First National Plan ¶ 3.2(A) and (B), and the Greenpoint Plan requires a minimum contribution of 3% for each regular employee. Greenpoint Plan ¶ 5.03(b)(1) and (3). However, contributions to the Greenpoint and First National Plans were made solely on the Debtor's own behalf. Accordingly, the Debtor failed to meet the minimum contribution of 3% for his other employees pursuant to IRC § 416(c)(2)(A) and the provisions of both contribution plans. Since the Debtor's pension plans were "top-heavy" plans that failed to meet the minimum contribution requirements, they are not "qualified" pension plans pursuant to the IRC and the provisions of the individual Keogh plans. I.R.C. § 416(a).

In light of the recent Supreme Court decision in *Patterson v. Shumate,* which held that "applicable nonbankruptcy law" for purposes of § 541 included the Employee Retirement Income Act of 1974 ("ERISA"), this Court notes that the Debtor's Keogh plans are not exempt since they are not subject to the anti-alienation provisions of ERISA.

ERISA applies only if there is an employee benefit plan that would be subject to ERISA. 29 U.S.C. § 1003(a); 29 U.S.C. § 1144(a); *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.,* 805 F.2d 732, 738 (7th Cir.1986), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987); *In re*

*Pruner,* 140 B.R. 1 (M.D.Fla.1992). ERISA recognizes two types of plans, "Employee Welfare Benefit Plans" and "Employee Pension Benefit Plans". 29 U.S.C. § 1002(1).

In the case before this Court, the Debtor concedes that he is the only participant in the Keogh plans even though he employs other individuals. Title I of ERISA contains a list of definitions for use within the subchapter which include the following:

(5) The term "employer" means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity.

(6) The term "employee" means any individual employed by an employer.

(7) The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. §§ 1002(5), (6), and (7). The Eleventh Circuit in *Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982) determined that:

The gist of ERISA's definitions of employer, employee organization, participant, and beneficiary is that a plan, fund, or program falls within the ambit of ERISA *only if the plan, fund, or program covers ERISA participants because of their employee status in an employment relationship,* and an employer or employee organization is the person that establishes or maintains the plan, fund, or program. *Thus, plans, funds, or programs under which no union members, employees or former employees participate are not employee welfare benefit plans under Title I of ERISA.*

---

**2.** Under both Keogh plans, a regular employee is defined as any employee other than a key

employee. First National Plan ¶ 1.30; Greenpoint Plan ¶ 2.43.

*Id.* at 1371 (footnotes omitted) (emphasis added).

In 1975, one year after Title I was enacted, the Secretary of Labor promulgated regulations pursuant to Congress' express delegation of rule-making authority to him. 40 Fed.Reg. 34526 (1975). These regulations clarify the statutory definition of "employee benefit plan" in various respects and provide in pertinent part:

(b) Plans without employees. For purposes of Title I of [ERISA] and this chapter, the term "employee benefit plan" shall not include any plan, fund or program, other than an apprenticeship or other training program, under which no employees are participants covered under the plan as defined in paragraph (d) of this section. For example, a so-called "Keogh" or "H.R. 10" plan under which only partners or only a sole proprietor are participants covered under the plan will not be covered under Title I. However, a Keogh plan under which one or more common law employees, in addition to the self-employed individuals are participants covered under the plan, will be covered under Title I.

29 C.F.R. § 2510.3–3(b).

Inasmuch as the Debtor is, and always has been, the only participant in the Keogh plans, the plans cannot be subject to the provisions of ERISA. Had the Debtor made contributions to the funds on behalf of at least a single employee, then his plan could potentially be subject to ERISA. *Pruner,* 140 B.R. at 3. *See also Kwatcher v. Massachusetts Service Employees Pension Fund,* 879 F.2d 957, 960 (1st Cir.1989) (once a person is found to be an "employer," ERISA prohibits payments from a qualified plan pursuant to statute's "anti-inurement" provision, 29 U.S.C. § 1103(c)(1)); *Giardono v. Jones,* 867 F.2d 409 (7th Cir.1989) (employer cannot ordinarily be employee or participant under ERISA pursuant to fundamental requirement preventing inurement mandated in 29 U.S.C. § 1103(c)(1)); *Schwartz v. Gordon,* 761 F.2d 864, 867–69 (2d Cir.1985) (plan whose sole beneficiaries are the company's owners cannot qualify as a plan under ERISA); *Peckham v. Board of Trustees,* 653 F.2d 424 (10th Cir.1981) (sole proprietors are not eligible for inclusion in employee pension benefits pursuant to ERISA). Accordingly, the Keogh plans are not exempt property subject to a restriction on transfer that is enforceable under non-bankruptcy law as is provided for by § 541(c)(2) of the Bankruptcy Code.

## B. Section 522(b)(1)

Section 522(b)(1) of the Code allows states to "opt out" of the federal exemption provision in § 522(d) by restricting their residents to the exemptions provided for under state law. *In re Iacono,* 120 B.R. 691, 693 (Bankr.E.D.N.Y.1990). New York is one of several states that have chosen to "opt out" of the federal bankruptcy exemptions. *In re Corbi,* 149 B.R. 325, 329 (Bankr.E.D.N.Y.1993). The exemptions afforded to New York debtors are enumerated in article 10–A of the New York Debtor and Creditor Law. N.Y.Debt. & Cred.Law §§ 282–284 (McKinney 1990).

Pursuant to § 282(2)(e) of the N.Y.Debt. & Cred.Law, a New York debtor is entitled to an exemption for a pension plan, unless the plan fails to meet the qualification requirements of the IRC:

[A]ll payments under a stock bonus, pension, profit sharing, or similar plan or contract on account of illness, disability, death, age, or length of service unless (i) such plan or contract, except those qualified under section 401 of the United States Internal Revenue Code of 1986, as amended, was established by the debtor or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose, (ii) such plan is on account of age or length of service, and (iii) *such plan or contract does not qualify under section four hundred one a, four hundred three a, four hundred three b, four hundred eight, four hundred nine or four hundred fifty-seven of the Internal Revenue Code of nineteen hundred eighty-six,* as amended.

N.Y.Debt. & Cred.Law § 282(2)(e) (McKinney 1992) (footnotes omitted) (emphasis

added). Therefore, if a debtor contributes funds to a pension plan which does not qualify under IRC § 401(a), the funds are not exempt property.

In addition, § 282 of the N.Y.Debt. & Cred.Law provides that a debtor may exempt from the property of the estate those exemptions allowed pursuant to § 5205 of the N.Y.Civ.Prac.L. & R. Section 5205(c)(2) as amended, provides in pertinent part that:

> [A]ll trusts, custodial accounts, annuities, insurance contracts, monies, assets or interests established as part of, and all payments from, either a Keogh (HR–10), retirement or other plan established by a corporation, which is qualified under section 401 of the United States Internal Revenue Code of 1986, as amended, ... shall be considered a trust which has been created by or which has proceeded from a person other than the judgment debtor, even though such judgment debtor is (i) a self-employed individual, (ii) a partner of the entity sponsoring the Keogh (HR–10) plan, or (iii) a shareholder of the corporation sponsoring the retirement or other plan.

N.Y.Civ.Prac.L. & R. § 5205(c)(2) (McKinney 1992).

Paragraph 3 of new subdivision (c) states that:

> All trusts, custodial accounts, annuities, insurance contracts, monies, assets, or interests described in paragraph two of this subdivision shall be conclusively presumed to be spendthrift trusts under this section and the common law of the state of New York for all purposes, including, but not limited to, all cases arising under or related to a case arising under sections one hundred one to thirteen hundred thirty of title eleven of the United States Bankruptcy Code, as amended.

N.Y.Civ.Prac.L. & R. § 5205(c)(3) (McKinney 1992). Accordingly, trusts created pursuant to pension plans which qualify under § 401 of the IRC of 1986, and payments therefrom, are conclusively presumed to be spendthrift trusts and are protected from judgment creditors.

While § 5205 was amended to extend the exemption to "either an initial Keogh (HR–10), retirement or other plan," *Iacono* at 695, the protection afforded to retirement benefits under this statute is inapplicable to the Debtor's Keogh plans which are at issue before this Court. As discussed above, the Debtor's Keogh plans fail to qualify under § 401 of the IRC. Accordingly, the Debtors "Keogh" plans are not exempt pursuant to § 282 of the N.Y.Debt. & Cred.Law. This Court finds that the funds on deposit in the Greenpoint and First National Keogh plans constitute property of the Debtor's estate.

CONCLUSIONS

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and § 157(b)(2)(E) as a core proceeding concerning an order to turnover property of the estate.

2. The Trustee's motion for summary judgment is granted.

3. Greenpoint and First National are directed to immediately turn over and surrender to the Trustee the monies on deposit in the alleged Keogh plans in their possession.

SUBMIT AN ORDER CONSISTENT WITH THIS OPINION.