**In re Barry FELDMAN, Debtor.**

**Bankruptcy No. 892–83762–20.**

United States Bankruptcy Court, E.D. New York, Westbury Division.

Sept. 7, 1994.

---

Jeffrey Hertzberg, Flower & Medalie, Bay Shore, NY, for Chapter 7 Trustee.

Allan B. Mendelsohn, Chapter 7 Trustee, Zavatsky & Mendelsohn, Syosset, NY.

Neal M. Rosenbloom, Kevin J. Nash, Finkel Goldstein Berzow & Rosenbloom, New York City, for debtor.

## DECISION AND ORDER

ROBERT JOHN HALL, Bankruptcy Judge.

### PRELIMINARY STATEMENT

The contested matter before the Court[1] derives from a motion ("Motion") by the chapter 7 trustee ("Trustee") for an order disallowing an exemption claimed by the debtor ("Debtor"). The issue raised by the Motion is whether the assets in a trust, created by Debtor pursuant to an allegedly qualified Keogh pension plan, may be exempt from property of the bankruptcy estate, or may be reached by the estate's creditors. Pursuant to the analysis set forth below, the Court holds that: (i) Trustee's motion is **GRANTED;** (ii) Debtor's pension plan is **NOT QUALIFIED** under applicable federal tax and New York state laws; (ii) the trust assets are **NOT EXEMPT** property; (iii) our order is **STAYED** through December 9, 1994; and (iv) Debtor has until December 9,

---

1. The Court has jurisdiction over this case pursuant to sections 1334, 157(a) and 157(b)(1) of title 28, United States Code and the order of referral of matters to the bankruptcy judges by the United States District Court for the Eastern District of New York (Weinstein, C.J., 1986). The Motion is a core proceeding. 28 U.S.C. § 157(b)(2)(B) (1994).

1994 to file and serve documentation establishing a **FAVORABLE RULING** by the Internal Revenue Service detailing that, contrary to our holding, the Keogh pension plan was a qualified pension plan at the time of Trustee's Motion, or that the plan may be altered and retroactively become qualified.

## RELEVANT FACTS WITH APPLICABLE LAW

In the 1980s, Debtor served as an account executive for Dean Witter Reynolds, Inc. ("Dean Witter"), working out of a branch office in Great Neck, New York. Debtor formed a self-owned corporation for the operation of this business, with himself at all times the sole employee.

In order to provide for his financial future, Debtor sought to establish a trust fund to provide a pension during retirement. *See generally* 26 U.S.C. §§ 401–420 (1994) (Internal Revenue Code sections covering deferred compensation vehicles including pension and profit sharing plans). Though some special rules apply, self-employed individuals are permitted to create their own pension trust fund by making contributions pursuant to the guidelines of a written pension plan. *Id.* § 401(c)(1)(A). Pension plans of self-employed individuals are often referred to as "Keogh" plans, so named after Congressman Eugene Keogh who originally sponsored the Self–Employed Individuals Tax Retirement Act of 1962. Keogh plans and multi-employee pension plans that are "qualified" under the Internal Revenue Code (discussed below within the Legal Discussion) receive favorable tax treatment. For qualified plans, such benefits include deductible employee contributions and tax-free earnings thereon. *Id.* §§ 70(*o*)(1), 401, 501.

Debtor states that he retained the "independent pension specialists," Goldberg & Ingber, P.C. ("Goldberg & Ingber"), to establish a qualified Keogh plan. (Debtor's Response to Trustee's Motion ¶ 3.) Goldberg & Ingber created the Barry Feldman Defined Benefit Pension Plan ("Original Plan"), which was adopted on May 16, 1985. Goldberg & Ingber sought determination from the Internal Revenue Service ("IRS") that the Original Plan complied with IRS guidelines and constituted a qualified Keogh pension plan entitled to the available favorable tax treatment. By letter dated May 27, 1986, the IRS issued a favorable ruling and confirmed that the Original Plan was in compliance with applicable law.

Pension plan laws were then modified pursuant to the Tax Reform Act of 1986. Pub.L. No. 99–514, §§ 1101–1177, 100 Stat. 2411–2520 (1986). Debtor represents that in an effort to maintain compliance with the tax laws, he requested that the Original Plan be revised by Goldberg & Ingber. A revised plan was drafted and entitled the Goldberg & Ingber, P.C. Defined Benefit Regional Prototype Pension Plan and Trust Agreement ("Plan"); it went into effect on January 1, 1989. Debtor states that IRS approval of the Plan is still pending. (Debtor's Response to Trustee's Motion ¶ 6.)

As manifested in its title, the Plan is a "defined benefit plan," as distinguished from a "defined contribution plan." (*See also* Debtor's Response to Trustee's Motion ¶ 1; Plan at 1, 2.) A defined benefit plan is created and maintained by the employer and commits a definite amount of pension benefits to covered employees upon retirement, where such amount is usually based on factors including the employee's years of service and compensation. Treas.Reg. 1.401–1(b)(1)(i); 26 C.F.R. § 1.401–1(b)(1)(i) (April 1, 1992 ed.). Alternatively, under a defined contribution plan, separate accounts are maintained for each employee participant, and the amount received by the employee during retirement is not resolute but is based only on contributions, gains and losses attributed to the account. 26 U.S.C. § 414(i) (1994). Any plan which is not a defined contribution plan is a defined benefits plan. *Id.* § 414(j).

On July 24, 1992, due to financial difficulties, Debtor filed a voluntary petition for bankruptcy relief under chapter 7 of title 11, United States Code (the "Bankruptcy Code"). In an effort to safeguard the Plan trust funds from claims of his creditors, Debtor listed his interest therein as an asset exempt from property of his bankruptcy estate. This exemption was claimed pursuant to New York law in Schedule C of his volun-

tary bankruptcy petition. (The applicable statutes are discussed in the Legal Discussion below.) The parties have informed the Court that the Dean Witter branch office in Great Neck is currently in possession of the Plan funds, which aggregated approximately $150,000 as of the date of Debtor's petition.

Trustee subsequently filed the Motion objecting to exemption of the Plan's funds. Trustee's argument centers upon Debtor's status as self-employed and as the sole employee of his self-owned corporation. All pension plans must meet certain requirements in order to be "qualified" under the provisions of the Internal Revenue Code. There are additional requirements necessary for a plan where the accrued benefits of "key employees" are a certain level greater than the accrued benefits of all (including non-key) employees under the plan. This type of plan is referred to as "top heavy." Trustee and Debtor agree that the Plan is "top heavy." Trustee argues that the Plan does not satisfy the additional requirements and is therefore not qualified. A pension plan which is not qualified, Trustee accurately concludes, is not exempt from property of a debtor's bankruptcy estate under New York law.

## LEGAL DISCUSSION

### I. Exemption of Pension Plan Trust Funds

The filing of a petition with the bankruptcy court creates an "estate" which comprises all of the debtor's legal or equitable interests in property as of the petition date. 11 U.S.C. § 541(a)(1) (1994). "The scope of [section 541(a)(1) ] is broad. It includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property...." H.R.REP. No. 595, 95th Cong., 1st Sess. 367–68 (1977); SEN.REP. No. 989, 95th Cong., 2d Sess. 82–83 (1978), U.S.Code Cong. & Admin.News 1978, 5787, *reprinted in* Norton Bankruptcy Law and Practice 2d at 491 (1993–94). *See, e.g., United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2313–14, 76 L.Ed.2d 515 (1983); *In re Brunswick Hosp. Ctr., Inc.,* 156 B.R. 896, 900 (E.D.N.Y.1993); *Bernstein v. Greenpoint Sav. Bank (In re Lane),* 149 B.R. 760, 763 (Bankr.E.D.N.Y. 1993).

An individual debtor may, however, assert the right to exempt certain property from this estate. 11 U.S.C. § 522(d)(10)(E) (1994); *Goldberg v. Torell (In re Rundlett),* 149 B.R. 353, 358 (Bankr.S.D.N.Y.1993) (quoting *In re Upright,* 1 B.R. 694, 702 (Bankr.N.D.N.Y. 1979)); *In re Mann,* 134 B.R. 710, 714 (Bankr.E.D.N.Y.1991). The effect of having property exempt from a bankruptcy estate is significant because, unless the debtor's case is dismissed, exempt property "is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case...." 11 U.S.C. § 522(c).

The Bankruptcy Code sets forth the federal law exemptions to which an individual debtor is entitled. *Id.* § 522(d). Each state is free, however, to "opt out" of this federal exemption scheme. *Id.* § 522(b)(1); *e.g., Lane,* 149 B.R. at 766 (citing *In re Iacono,* 120 B.R. 691, 693 (Bankr.E.D.N.Y.1990)). Debtors domiciled in these states have available an exclusive list of state-defined, rather than federal, exemptions. 11 U.S.C. § 522(b)(1) (1994).

New York is among the states that have opted out of the federal exemption scheme. N.Y. DEBT. & CRED. LAW § 284 (McKinney 1994); *e.g., Lane,* 149 B.R. at 766; *In re Orlebeke,* 141 B.R. 569, 570 (Bankr.S.D.N.Y. 1992); *In re Nudo,* 147 B.R. 68, 70 (Bankr. N.D.N.Y.1992). New York's state law exemptions are cumulatively set forth in section 5205 of New York's Civil Practice Law and Rules and sections 282 through 284 of New York's Debtor and Creditor Law. N.Y.CIV. PRAC.L. & R. 5205 (McKinney 1994); N.Y.DEBT. & CRED.LAW §§ 282–84 (McKinney 1994). In part, these sections govern whether trust funds contributed under a pension plan are exempt from the property of a debtor's bankruptcy estate.

Debtor and Creditor Law section 282(2)(e) states, in relevant part:

Under section five hundred twenty-two of title eleven of the United States Code, entitled "Bankruptcy", an individual debtor domiciled in this state may exempt from property of the estate ... (2) ... (e) all

payments under a stock bonus, pension, profit sharing, or similar plan ... unless (i) such plan or contract, except those qualified under section 401 of the United States Internal Revenue Code of 1986, as amended, was established by the debtor or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose, (ii) such plan is on account of age or length of service, and (iii) such plan or contract does not qualify under section four hundred one a, four hundred three a, four hundred three b, four hundred eight, four hundred nine or four hundred fifty-seven of the Internal Revenue Code of nineteen hundred eighty-six, as amended.

N.Y.DEBT. & CRED.LAW § 282(2)(e) (McKinney 1990) (emphasis added) (footnotes omitted). Section 5205(c) of the New York Civil Practice Law and Rules provides, in pertinent part:

1. ... [A]ll property while held in trust for a judgment debtor, where the trust has been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor, is exempt from application to the satisfaction of a money judgment.

2. ... [A]ll trusts ... established as part of, and all payments from, either a Keogh (HR–10), retirement or other plan established by a corporation, which is qualified under section 401 of the United States Internal Revenue Code of 1986, as amended, ... shall be considered a trust which has been created by or which has proceed-

ed from a person other than the judgment debtor, even though such judgment debtor is (i) a self-employed individual

. . . .

3. All trusts ... described in paragraph two of this subdivision shall be conclusively presumed to be spendthrift trusts. . . .

N.Y.CIV.PRAC.L. & R. 5205(c) (McKinney 1994).

■ Accordingly, funds deposited by a debtor to a trust account pursuant to the guidelines of a pension plan are exempt from property of the debtor's bankruptcy estate, in New York, if the plan is qualified under section 401 of the Internal Revenue Code of 1986, as amended. N.Y.CIV.PRAC.L. & R. 5205(c)(2) (McKinney 1994);[2] N.Y.DEBT. & CRED.LAW §§ 282–84 (McKinney 1994); 26 U.S.C. § 401 (1994); *Bernstein v. Greenpoint Sav. Bank (In re Lane)*, 149 B.R. 760, 764 (Bankr.E.D.N.Y.1993); *In re Mann*, 134 B.R. 710, 714 (Bankr.E.D.N.Y.1991) ("In 1989, the New York Legislature specifically and intentionally enlarged the definition of exempt property to include payments from a Keogh (HR–10) retirement or other plan established by a corporation which is qualified under section 401 of the Internal Revenue Code. . . .") (citation omitted).

## II. Top-heavy Pension Plans

In addressing whether a plan is qualified, section 401 distinguishes between "top heavy" plans and non-top-heavy plans, setting forth distinct requirements. 26 U.S.C. § 401(a)(10)(B) (1994). A top-heavy plan

---

**2.** The instant case falls under section 5205(c)(2) of New York's Civil Practice Law and Rules. N.Y.CIV.PRAC.L. & R. 5205 (McKinney 1994). Other methods of precluding estate creditors from reaching certain trust funds, including qualified pension trust funds, are available in conjunction with Bankruptcy Code section 541(c)(2). *See id.* 5205(c)(1); 11 U.S.C. § 541(c)(2) (1994). Under section 541(c)(2), the bankruptcy estate will not include the debtor's interest in property in a trust if there is an enforceable non-bankruptcy law restriction upon the debtor's right to alienate such interest. *Id.* Trusts that have such restriction include state-law defined "spendthrift" trusts, and trusts retaining pension funds contributed pursuant to plans covered by the Employee Retirement Income Security Act of 1974 (commonly referred to as "ERISA"). *Patterson v. Shumate*, —— U.S.

——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992); *e.g., Bernstein v. Greenpoint Sav. Bank (In re Lane)*, 149 B.R. 760, 763 (Bankr.E.D.N.Y.1993); *In re Mann*, 134 B.R. 710, 714 (Bankr.E.D.N.Y. 1991); 29 U.S.C. § 1056(d) (1994) (absent limited exceptions, ERISA plan benefits may not be assigned or alienated). Debtor's Plan at bar does not fit within either exemption category. The Plan is not governed by ERISA since ERISA's labor provisions only apply to pension plans that have employees as participants. *See* 29 C.F.R. §§ 2510.3–3(b), 2510.3–3(c)(1) (1994). Further, while the Plan contains spendthrift provisions, since it was self-settled, it must *also* be qualified under section Internal Revenue Code section 401. N.Y.CIV.PRAC.L. & R. 5205(c) (McKinney 1994); N.Y.DEBT. & CRED.LAW § 282 (McKinney 1994).

provides greater benefits to "key employees." *Id.* § 416(g) (top-heavy plan defined); *see also id.* § 416(i)(1) (key employee defined). Key employees include persons who own above a certain portion of the employer entity, or whose benefits under the plan are greater than 50 percent of the dollar limit on benefits. *Id.* § 416(i)(1). A pension plan is top-heavy when "the present value of the cumulative accrued benefits under the plan for key employees exceeds 60 percent of the present value of the cumulative accrued benefits under the plan for all employees." *Id.* § 416(g) (1994).[3] At bar, Debtor and Trustee concede that the Plan is top-heavy, since more than 60 percent of the accrued benefits are allocated to Debtor who is a key employee under the Plan. We accordingly focus on section 401's qualification of top-heavy plans.

### III. Qualification of Top-heavy Plans

Qualification of a top-heavy pension plan under section 401 turns on whether the trust which receives plan contributions is itself qualified. 26 U.S.C. § 401(a)(10)(B) (1994). Qualification of the trust is defined by reference to section 416 of the Internal Revenue Code. *Id.* To be a qualified trust under section 416(a), the top-heavy plan, of which the trust is a part, must meet certain vesting and minimum benefit requirements. *Id.* § 416(a).

The vesting requirement of section 416 mandates that after an employee's completion of three years of service, the entire accrued benefits of that participant must be non-forfeitable. *Id.* § 416(b); *see also* 26 C.F.R. § 1.416-1 (April 1, 1992 ed.) (IRS Treasury Regulations explaining requirements for qualification).

Section 416's minimum benefits requirement for a top-heavy plan requires that an employer's contributions to non-key employee pension accounts are not less than a certain percentage of the employee's compensation. 26 U.S.C. § 416(c) (1994). The minimum benefits required for a defined benefit plan are different from that required of a defined contribution plan. *Id.* As stated, Debtor's plan at bar is a defined benefit plan.

A defined benefit plan satisfies the minimum benefits requirement of section 416, if the accrued benefit derived from an employer's contributions to the account of a non-key employee participant, when expressed as an annual retirement benefit, is not less than a certain percentage of the employee's average compensation for certain testing period years. *Id.* § 416(c)(1). The percentage used is the lesser of 2 percent multiplied by the number of years of service with the employer, or 20 percent. *Id.* § 416(c)(1)(B). The testing period is the period of consecutive years, not exceeding five, during which the participant had the greatest aggregate compensation from the employer. *Id.* § 416(c)(1)(D).

### IV. Debtor's Plan

■ Turning to the Plan before us, we examine its vesting and minimum benefits provisions.

Item 15 of the Plan provides that "[v]esting in the accrued benefit from Employer Contributions shall be one hundred (100%) percent at all times." (Goldberg & Ingber,

---

**3.** Read literally, it appears that a plan is not top-heavy under section 416(g) where the only employee participating under the plan is self-employed. In such case, the accrued benefits under the plan for the key (only) employee are *not* greater than the present value of the cumulative accrued benefits under the plan for all employees; the benefits are equal. 26 U.S.C. § 416(g) (1994); *see* Treas.Reg. § 1.416-1 (T-36), 26 C.F.R. § 1.416-1 (April 1, 1992) (quoted in part *infra* in Part II) (discussing a plan with no employee participants as one that is not top-heavy). Whether this is a proper reading is not before the Court, though. Debtor and Trustee agree that the Plan at bar is top-heavy and the issue was not briefed. Moreover, the analyses in Parts IV and V function to determine whether the Plan is qualified under either reading of section 416(g). Were Debtor's Plan top-heavy under the section, Part IV contains the answer because there our focus is on whether Debtor's top-heavy Plan is qualified. If under section 416(g) the Plan were not top-heavy, our discussion below in Part V would provide the resolution. There, Debtor's argument requires us to evaluate whether the Plan is qualified under the premise that it is not presently top-heavy. Thus, while we do not determine whether Debtor's Plan is top-heavy under section 416(g) because such finding was not requested, we do determine whether the Plan is qualified under either result.

P.C. Defined Benefit Regional Prototype Pension Plan and Trust Agreement at 26.) The vesting requirement is satisfied since employees are to be fully vested upon completion of three-years of service.

The Plan fails to satisfy the minimum benefits requirement, however. Section 1.01(c)(1) of the Plan addresses this requirement, stating:

> ... [F]or any Plan Year in which this Plan is a Top–Heavy Plan, each participant who is not a Key Employee and who has completed one thousand (1000) Hours of Service during such Plan Year will accrue a minimum benefit, provided solely by Employer contributions and expressed as a life annuity commencing at his or her Normal Retirement Date, equal to two (2%) percent of his or her highest Average Monthly Compensation for the five (5) consecutive years after January 1, 1984 ... for which the Participant had the highest Compensation.

Goldberg & Ingber, P.C. Defined Benefit Regional Prototype Pension Plan and Trust Agreement, section 1.01(c)(1), Articles portion at 2.

Pursuant to section 1.01(c)(1) of Debtor's Plan, then, employer contributions to non-key employee participants are less than the minimum benefits required by statute. A hypothetical provides confirmation: A non-key employee is a participant under the Plan for eight years, continuously salaried at $10,000 per month or $120,000 per year. The employee would stand to receive an accrued minimum benefit, deriving solely from employer contributions, of $200 for each year that the Plan is top-heavy. *Id.* This $200 figure is calculated under the Plan by multiplying the employee's $10,000 monthly salary by 2 percent. The Plan's minimum benefits would total $1,600 after eight years. Given the same facts, though, an employer would be required to make far greater contributions in order for a Plan to be qualified under the Internal Revenue Code. Under a qualified plan, the minimum accrued benefits deriving from the employer's contributions would equal the lesser of 20 percent multiplied by the annual compensation (20% × $120,000 = $24,000) or 2 percent multiplied

by the number of years of service multiplied by the annual compensation (2% × 8 × $120,000 = $19,200). The $1,600 in contributions that would be funded under Debtor's plan are plainly less than the $19,200 in minimum benefits required under a qualified plan. Therefore, the Plan provides for non-key employees to receive less than the minimum benefits required by section 416(c)(1). 26 U.S.C. § 416(c)(1) (1994). No statement by Debtor presents reason to hold otherwise.

Since the Plan does not provide non-key employees with the minimum benefits required under section 416(c)(1), it is not a qualified top-heavy plan under section 401. *Id.* 401(a)(10)(B) (1994).

## V. Minimum Benefits Requirement Under Plan Without Non-key Employee Participants

█ Debtor raises another argument, though, regarding the failure of the Plan to provide the minimum benefits required for qualified status. Indeed in papers Debtor did not ardently maintain that the Plan's provisions for non-key employees satisfy the formulae required of qualified top-heavy pension plans. Rather, Debtor maintains that the Internal Revenue Code's minimum benefits requirement for non-key employees is not relevant because, except for Debtor, there were never any other employees who stood to receive such contributions. Debtor argues that a plan need not contain provisions providing minimum benefits to non-key employees where there are no non-key employee participants. Debtor's responsive papers state:

> 13. To be sure, the Debtor's Plan is "top-heavy" (i.e., more than 60% of the accrued benefits are allocated to the Debtor as the key employee under the Plan), but this in and of itself is irrelevant to the issue of IRS qualification. A "top-heavy" plan only loses its qualification if minimum benefits are not accrued for non-key employees. *See,* Treas.Reg. § 1.46–1.

> 14. In the *Lane* case, the Debtor's exemption was disallowed because of his failure to fully fund the Plan, and not because a "top-heavy" plan is *per se* invalid. Judge Duberstein found improper the fact that

the debtor in *Lane* neglected to honor the minimum funding requirements for non-key employees and only made contributions on behalf of himself although he had other employees. For the plan in *Lane* to receive IRS qualification, the Debtor was required to make contributions for both himself and the other non-key employees. His failure to do so nullified the validity of his plan and ultimately undermined his claim of exemption. *Id.* at 765.

15. *By contrast here, the Debtor had no other employees besides himself and therefore, the minimum funding requirements for non-key employees do not come into play.*

Debtor's Response to Trustee's Motion ¶¶ 13–15 (emphasis added). Debtor cites to no statutory or case law authority for his proposition that top-heavy defined benefit pension plans which do not provide the minimum level of benefits to non-key employees may nevertheless be qualified where there are no non-key employees. Assumably, Debtor's citation to Treasury Regulation section 1.416–1, (*id.* ¶ 13), is to support his contention that a top-heavy plan must contain provisions which confer minimum benefits to non-key employees *only* where there are in fact non-key employees participating under the plan. But the Treasury Regulation and the Internal Revenue Code in fact provide otherwise.

As stated, section 401 of the Internal Revenue Code deals with the requirements for qualification of pension (as well as profit-sharing and stock bonus) plans. Section 401(a)(10)(B)(ii) is entitled "Plans which may become top-heavy." 26 U.S.C. § 401(a)(10)(B)(ii) (1994). This section provides that a trust formed as part of a plan, whether or not the plan is top-heavy, shall constitute a qualified trust:

only if such plan contains provisions—

(I) *which will take effect* if such plan becomes a top-heavy plan, *and*

(II) which *meet* the requirements of section 416.

*Id.* Thus any plan, top-heavy or not, which may become top-heavy, must be equipped to deal with top-heavy status and satisfy section 416's vesting and minimum benefits requirements. *Id.*

The Treasury Regulations confirm that the IRS requires pension plans to include provisions that will become effective in the event a plan becomes top-heavy and that satisfy section 416(c)'s minimum benefits requirement. Treas.Reg. § 1.416–1 (T–36), 26 C.F.R. § 1.416–1 (April 1, 1992). Section 1.416–1 contains a question and answer format that deals with the issue squarely:

Q. *For an employer who has no employee who has participated* or is eligible to participate in both a defined benefit and defined contribution plan ... of that employer, *what provisions must be in the plan* (s) to comply with the top-heavy requirements?

A. (a) If the defined benefit plan has no participants who are or could be participants in a defined contribution plan of the employer (or vice versa), the defined benefit plan (or defined contribution plan) need not include provisions describing the defined benefit or defined contribution fractions for purposes of section 415 and, thus, the plan need not contain provisions to determine whether the plan is super top-heavy or to change any plan provisions if the plan becomes super top-heavy. Furthermore, if the plan contains a single benefit structure that satisfies the requirements of section 416(b), (c), and (d) for each plan year without regard to whether the plan is top-heavy for such year, the plan need not include separate provisions to determine whether the plan is top-heavy or that apply if the plan is top-heavy. *If the plan's single benefit structure does not assure that section 416(b), (c), and (d) will be satisfied in all cases, then the plan must include three types of provisions.*

(b) First, the plan must contain provisions describing how to determine whether the plan is top-heavy....

(c) Second, *the plan must specifically contain the following provisions that will become effective if the plan becomes top-heavy:* vesting that satisfies the minimum requirements of section 416(b), *benefits that will not be less than the minimum benefits set forth in section 416(c),* and the

compensation limitation described in section 416(d).... If a plan always meets the requirements of either section 416(b), (c) or (d), the plan need not include additional provisions to meet any such requirements.

(d) Third, the plan must include provisions insuring that any change in the plan's benefit structure (including vesting schedules) resulting from a change in the plan's top-heavy status, will not violate section 411(a)(10). Thus, if a plan ceases being top-heavy, certain restrictions apply with respect to the change in the applicable vesting schedule.

*Id.* (emphasis added).

The Treasury Regulation explains how a plan which has no employee participants can comply with the top-heavy requirements. *Id.* The plan will comply if it has a single benefit structure that satisfies the vesting and minimum benefits requirements of section 416 whether or not the plan is top-heavy. *Id.* Alternatively, the plan can comply if it contains provisions which satisfy section 416 and which become effective if the plan becomes top-heavy. *Id.*

At bar, Debtor's Plan does not contain a single benefit structure that always satisfies the minimum benefits requirement of section 416(c). Regarding the prospectively top-heavy argument, Debtor has not referred the Court to any clause of the Plan which, in the event of non-key employee participation under the Plan, provides for their receipt of minimum benefits that satisfy section 416. Our analysis of the Plan discloses no provision that alters the minimum benefits to non-key employees in the event non-key employees participate. Since the Plan does not specifically contain provisions that meet the statutory requirements and that become effective in the event employees participate and the Plan becomes top-heavy, it does not conform to the express guidelines of Internal Revenue Code sections 401(a)(10)(B)(ii), 416(c)(1) and the Internal Revenue Service Treasury Regulation section 1.416-1.

The Court holds that the trust which contains funds deposited pursuant to the Plan is not a qualified trust pursuant to section 401 of the Internal Revenue Code. Consequently, the funds deposited pursuant to the Plan may not be exempt from the assets of Debtor's estate under New York law.

## VI. Remedial Amendment to the Plan

■ There is a final matter which requires attention. As mentioned, Debtor is awaiting IRS approval of the Plan. Were Debtor to receive approval of the Plan such that it is qualified, the Court would be amenable to revisit the issues, in light of and in deference to such IRS ruling. Similarly, the Court would revisit the matter were Debtor given the opportunity to amend the Plan to include required provisions, or to delete disqualifying provisions, rendering the Plan qualified with retroactive effect. *See* 26 U.S.C. § 401(b); Treas.Reg. § 1.401(b)–1(a), 26 C.F.R. § 1.401(b)–1(a) (1994).

As of the date of the Motion, though, IRS approval was pending. An IRS ruling would be enlightening; therefore, a temporary stay of our order is proper. For these reasons, our holding that the trust funds deposited under the Plan are not exempt property shall be stayed until December 9, 1994. Debtor shall have until this date (or until such later date as the Court orders, on request made on notice before December 9, 1994, for cause shown—other than continued pendency of IRS approval) to serve upon the Trustee and file with the Court appropriate documents establishing IRS approval of the Plan as a qualified pension plan as of the date of Trustee's Motion. Should Debtor fail to file and serve proper and sufficient documentation, Trustee shall settle an order vacating the within stay and allowing Trustee to complete administration of Debtor's estate in accordance with this opinion and order.

**SO ORDERED.**